278 P.2d 892

Don PENA, Administrator of the Estate of Frankie Pena, and Don Pena and Esther M. Pena, husband and wife, Appellants,

v.

W. R. STEWART and Mae B. Stewart, his wife, and The Phœnix Title & Trust Company, a corporation, and Central Arizona Light & Power Company, now known as Arizona Public Service Company, a corporation, Appellees.

No. 5878.

Supreme Court of Arizona.

Jan. 18, 1955.

W. Roy Tribble, Chandler, and John Vanlandingham, Theodore G. McKesson, Phoenix, for appellants.

Johnson & Shelley, Mesa, for appellees Stewart.

Moore & Romley and Anthony T. Deddens, Phoenix, for appellee Title Co.

Snell & Wilmer, Phoenix, for appellee Utility Co.

UDALL, Justice.

This is an appeal from a judgment entered on a directed verdict at the close of

plaintiffs' case in favor of all the above-named defendants on the ground that plaintiffs had failed to present a prima facie case of negligence against any of said defendants. Plaintiffs by appropriate assignments of error, supported by several propositions of law, challenge the correctness of the court's evaluation of the evidence and its ruling that they had failed to submit sufficient proof to entitle them to have the cause submitted to the jury for its determination of the issues.

■■■■ Admittedly questions of negligence and contributory negligence are for the courts only when the facts are undisputed and lead but to one conclusion. Further it is fundamental that motions for directed verdicts are regarded as admitting the truth of whatever competent evidence the opposing party has introduced including the reasonable inferences to be drawn therefrom. Accordingly it is the duty of this court on appeal, in this situation, to view the evidence in a light most favorable to plaintiffs. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201; Moore v. Southwestern Sash & Door Co., 71 Ariz. 418, 228 P.2d 993; Bassett v. Ryan, 72 Ariz. 383, 236 P.2d 458.

The evidence offered by plaintiffs in support of their action may be summarized as follows: Plaintiffs rented a certain house or cabin at Lemon's Court located in Chandler, Arizona, from Mr. and Mrs. Lindley who were duly authorized agents of the owners, W. R. Stewart and Mae B. Stewart, his wife,—defendants herein—at a rental of $4 per week or $15 per month. An initial payment of $4 was made at the time they moved in on October 16, 1950. The rooms were approximately nine feet by twelve feet and the interior partitions were mostly cardboard paper with some black tar paper around the walls. There were four outside doors, one in each of the front rooms. These doors were of half wood and half screen construction. The screen on one of the front-room doors had been covered with a blanket. Three open doorways connected the rooms inside. One witness—a former tenant—said it was commonly referred to as "the rag house".

The landlord had partly furnished the cabin by leaving a cot and a kerosene stove therein. This stove was located in one of the front rooms near a doorway leading into the other front room. According to Mrs. Pena the stove had never operated properly during the short time they occupied the cabin. Sometimes it would not light at all and on other occasions it would keep burning after it was turned off and "sometimes the flame would burn way up high". A gas pipe outlet came through the north wall of the other front room and a plug had been driven into the end of this pipe. The service line, which had been installed by and belonged to the landlord, ran from the cabin across to the meter attached to the natural gas line owned by defendant The Central Arizona Light and Power Company.

On October 16, 1950, when the Pena family first occupied the cabin, Mrs. Pena smelled gas which came from the north side of the room where the gas pipe was located and she advised Mrs. Lindley of this fact. What then ensued will be more fully developed later in the opinion. It does appear however that Mr. Lindley then made an examination but found no evidence of leaking gas. Nonetheless, Mrs. Evelyn Davis, a prior tenant who had moved out the day before Penas moved in, testified that while she had not used natural gas in the house she had been constantly annoyed for the two and a half months she lived there by the obnoxious odor of gas in this particular room, but she admitted she had never mentioned this fact to the Lindleys.

On October 20, 1950, around noontime, Mrs. Pena was ironing in the kitchen about two or three feet from the kerosene stove. This stove was fed from a one-half gallon glass jar or bottle containing kerosene. She had lit the stove just four or five minutes previously and the two front doors were then closed. Mrs. Pena testified she had just sent her small son Frankie, aged two and one-half years, into the back bedroom where her brother was, when suddenly

"* * * I raised my hands up in front of my face like that and my arms, and there was a fire that hit me, and I went out this door (front door) and I fell because there was a little platform I missed, I missed the steps, a little platform, I fell on my knees and I fainted. When I got up I said 'God save our baby,' that is all I could do. * * *"

An explosive report was heard *after* the flash fire had started. The cabin was quickly enveloped in flames and razed to the ground. Their minor son Frankie was burned to death while Mrs. Pena received first degree burns on her face and second degree burns on her hands and forearm. This injury caused her great pain and suffering and she incurred doctor and hospital bills for treatments received.

A tort action for damages in the sum of $25,000 was filed. The pleadings were subsequently amended and the utility company made a party defendant. The case went to trial on plaintiffs' second amended complaint after the issues had been framed by the filing of separate answers on the part of each of the defendants. As heretofore stated, at the close of plaintiffs' case the court instructed a verdict for all of the defendants, judgment was entered thereon and this appeal followed. Of necessity the liability, if any, of the three sets of defendants must be separately determined and a more detailed statement of the issues as to each will be later stated, coupled with some additional facts.

### Case Against the Stewarts

The theory on which the plaintiffs seek to hold defendants Stewart, as stated

in their complaint, is that defendants, having been given notice of facts from which they might infer that the gas pipe was defective, were negligent in failing to repair the defects despite a promise so to do. They also claim the aid of the doctrine of *res ipsa loquitur* to supply a basis on which the jury might find negligence, contending the "gas pipe was attached to the premises and therefore under the control of * * *" these defendants.

As we stated in the case of Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352, 356:

"Where negligence is charged to another's conduct, it is often helpful to break the problem down into its component parts of duty, violation thereof, and resulting injury * * *."

The rights and duties of the parties in the instant case depend upon their relationship, which is clearly that of landlord and tenant. In the reported cases there are many excellent statements of the law prescribing the rights and liabilities of a landlord for injuries to tenant caused by defects on the premises. One of the best is found in the case of Brooks v. Peters, 157 Fla. 141, 25 So.2d 205, 206; there plaintiff was injured by the explosion of a gas heater belonging to the defendant landlord but over which plaintiff had been granted exclusive control. In affirming judgment for defendant the court said:

"It is established law that when a landlord delivers to the tenant posses-

sion and control of the demised premises, including the plumbing, drains, and appliances for heating, lighting, and power, the landlord is not liable for an injury to the property or person of the tenant or those on the premises in the right of the tenant, although such injuries are attributable to defects in such apparatus, appliances or fixtures. Thus a tenant may not hold a landlord liable for injuries caused by explosion of plumbing, or heating apparatus on premises, the possession and control of which have been surrendered to him, in the absence of fraud or concealment. (Cit.)"

* * * * * *

"Where the landlord surrenders possession and control of the leased premises to the tenant, in the absence of fraud or concealment, the tenant assumes the risk as to the condition of the premises, including the heating, lighting apparatus, plumbing, water pipes, sewers, etc. In other words, the rule of *caveat emptor* applies, hence the landlord is not liable for any personal injuries or sickness of tenants, although attributable to the defects in the fixtures."

See also: Annotation entitled "Injury to Tenant—Heating Plant", 13 A.L.R. 837, as supplemented in 26 A.L.R. 1254 and 52 A.L.R. 864.

In the instant case there were neither allegations nor proof of fraud or conceal-

ment; furthermore it manifestly appears that plaintiffs were immediately aware of possible danger of escaping gas arising from the gas pipe in question.

Plaintiffs contend that defendants Stewart, through their agents the Lindleys, agreed to repair the pipe, and having assumed this duty are liable for any injury caused by their failure to perform. The only testimony in the record relative to such an agreement is that of Mrs. Pena, who testified that she informed Mrs. Lindley there was an odor of gas near the pipe. When asked what Mrs. Lindley did, Mrs. Pena replied:

"She just said, 'we will see what we can do about it.' That is all she said."

Mr. Lindley testified that he thereafter investigated and, finding no evidence of the presence of gas, lit matches and held them to the end of the pipe to demonstrate to Mrs. Pena that there was no danger.

Even if Mrs. Lindley's statement could be construed as a promise to repair, it was merely *nudum pactum*, not being supported by any consideration, and therefore created no rights or liabilities in the parties. Miller v. Vance Lumber Co., 167 Wash. 348, 9 P.2d 351. 52 C.J.S., Landlord and Tenant, § 417 a. (4); 32 Am.Jur., Landlord and Tenant, section 662. Cf. Friedman v. Le Noir, 73 Ariz. 333, 241 P.2d 779.

We cannot agree with plaintiffs that the doctrine of *res ipsa loquitur* applies. The following statement of this rule appears in 38 Am.Jur., Negligence, section 295:

"* * * In the language of a leading case, 'where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that *if due care had been employed by the party charged with care in the premises,* the thing that happened amiss would not have happened,' negligence may fairly be inferred in the absence of any explanation." (Emphasis supplied.)

In the instant case defendants Stewart were not "charged with care", for as is seen from our foregoing discussion the law imposes no duty upon them. It further appears this doctrine has no application unless the apparatus or thing causing the accident is at the time of the injury in control of the party charged with negligence. Alexander v. Pacific Greyhound Lines, 65 Ariz. 187, 177 P.2d 229. It is clear the "appliances and agencies of the premises" causing the injury were not in the control of the defendants, but rather under the exclusive control of the plaintiff tenants.

We hold that as to defendants Stewart the trial court was correct in directing a verdict in their favor.

### The Action Against Phoenix Title and Trust Company

Plaintiffs sought to hold the defendant Title Company for the same negligent conduct charged against the Stewarts, alleging in their complaint that:

"* * * W. R. Stewart and Mae B. Stewart, husband and wife, together with the Phoenix Title and Trust Company, a corporation, were the owners of the certain real property * * * (here described) * * *, the exact relationship between defendants being unknown to plaintiffs."

As this defendant points out in its brief, a search of the reporter's transcript reveals no testimony in the record to show that any officer, agent or employee of the Title Company was ever on the premises, or ever had any dealings whatsoever with the plaintiffs. In fact not even the name, "Phoenix Title and Trust Company", appears in any testimony in the record.

Plaintiffs in their brief recognize that the only interest of the Title Company in the premises was the naked legal title which it held as trustee for the defendants Stewart, this interest being admitted in the Title Company's answer. They contend "* * * that the Phoenix Title and Trust Company are co-principals with W. R. Stewart and Mae B. Stewart under the theory of the case of Barker v. General Petroleum Corporation, 72 Ariz. 187, 232 P.2d 390, modified, 72 Ariz. 238, 233 P.2d 449." The question in the original Barker case was whether a local distributor of petroleum products was an agent of the supplying company or an independent contractor. We can see no possible application of the rule of that case to the instant problem.

The rule governing the liability of such a trustee is aptly stated in Shearman and Redfield on Negligence, Vol. 4, section 772, cited by the Title Company:

"* * * if the sole equitable and beneficial interest, coupled with the control of the land, is in another, the latter *and not the trustee is the person answerable for the condition of the land.*"

From the record before us it is clear that there was no basis in fact or law on which this defendant might be found liable. We therefore hold that the trial court did not err in directing a verdict in its favor.

### Case Against the Public Utility Company

The acts of negligence charged against defendant, Central Arizona Light and Power Company, now known as the Arizona Public Service Company, a corporation (hereinafter referred to as the utility company) are in substance that prior to the explosion the utility company was

given notice of the defective condition of the pipe in question and was given notice to turn the gas off at the point where their line and the private line to the cabin joined, and that on October 19, 1950, the utility company did turn off the gas in said line in a negligent and careless manner to the extent that the gas was allowed to leak from its line into the pipeline leading to the cabin in question. That as a result of this negligence an explosion and fire occurred to the damage of the plaintiffs.

There is not a scintilla of evidence that the utility company, prior to the fire, was given notice of a defective condition of the "pipe capping" in the Pena cabin. Mr. Lindley did testify that the morning after the fire he went down to the company offices in Chandler and was informed that its records disclosed the gas had been cut off the day (October 15, 1950) the Hartzoggs moved out. However, there is no evidence that this was done in the negligent or careless manner alleged unless there are drawn a series of inferences so strained as to be within the prohibition of the rule of New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948; and Crozier v. Frohmiller, 65 Ariz. 296, 179 P.2d 445.

The record discloses the possibility that the fire resulted from the kerosene stove which had not been working properly. On cross-examination the engineer called as an expert by plaintiffs admitted that it would be impossible to reach a conclusion as to what caused the accident upon other than conjecture.

The general rule is that where the evidence shows an injury may have resulted from one of several causes, but only one of the causes can be attributed to the defendant's negligence, the plaintiff must fail. Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521; Salt River Valley Water Users' Ass'n v. Blake, 53 Ariz. 498, 90 P.2d 1004.

Likewise since the utility company was not responsible for the condition of the kerosene stove the doctrine of *res ipsa loquitur* has no application. This court in Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 68 P.2d 952, 956, quoted the following statement of the rule:

" 'Neither does it *(res ipsa loquitur)* apply where cause of the accident is unexplained and might have been due to one of several causes for some of which the defendant is not responsible.' "

The plaintiffs having failed to establish actionable negligence on the part of the defendant utility company, the trial court properly directed a verdict in its favor.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.