385 P.2d 220

**C. E. HARBOUR, Appellant,**

**v.**

**RELIABLE INSURANCE COMPANY, a corporation, Agricultural Insurance Company, a corporation, Tri-City Credit Insurance Agency, Inc., a corporation, Appellees.**

No. 7502.

Supreme Court of Arizona.

In Division.

Sept. 18, 1963.

Rehearing Denied Oct. 22, 1963.

Rawlins, Ellis, Burrus & Kiewit, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, Phoenix, for appellees Reliable Ins. Co. and Agricultural Ins. Co.

Allan K. Perry, Phoenix, for appellee Tri-City Credit Ins. Agency, Inc.

BERNSTEIN, Chief Justice.

Appellant was plaintiff in a suit to collect on insurance policies covering hail damage to his cotton crop. The trial court granted summary judgment for the defendant insurance companies and their agent, Tri-City Credit Insurance Agency, Inc., and it is from that judgment that plaintiff appeals.

■ In considering the motion for summary judgment, this Court must take that view of the evidence most favorable to the plaintiff and give the plaintiff the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, the evidence is such that reasonable men might reach different conclusions as to whether there is a genuine issue as to any material fact the judgment must be reversed. 6 Moore's Federal Practice (2nd ed. 1953) Sec. 56.

Viewed in this light the evidence is as follows: Two insurance policies were taken out by one Marion Neal to cover possible hail damage to a cotton crop. Two policies were taken out because it is customary for the insured to tell the insurance agent the amount of coverage wanted and for the agent to place the insurance with more than one company so that each company may limit its exposure.

When Mrs. Neal took out the insurance policies she went at first to one Cottrell, an insurance agent with whom she had previously done business. Cottrell took her to the office of the Greenwood Insurance Agency where the application for insurance was taken by Mrs. Greenwood. Mrs. Greenwood does business as the Tri-City Credit Insurance Agency, a separate business from the Greenwood Insurance Agency. The offices are across the street and Mrs. Greenwood went to her husband's office to take the applications; his company was not able to place crop hail insurance. Mrs. Neal was not informed that the insurance was being placed by Tri-City rather than by the Greenwood Agency. At all times she thought she was dealing with the Greenwood Agency. When the applications were taken, Mrs. Neal did not know that Mrs. Greenwood took them. She did not know that she had met Mrs. Greenwood. Mrs. Neal told the insurance agents that she was planning to sell the land and, as Mrs. Greenwood said:

"That at such time as she did she would notify us."

The premiums on policies were not paid at the time of the application.

When the policies were received by Tri-City, Mrs. Greenwood billed and mailed them to Cottrell. The land was sold about this time and the plaintiff paid the premium on the policies to Cottrell who deducted his commission and sent the balance of the premium to Mr. Greenwood. A receipt for the premium was issued by Mrs. Greenwood (of Tri-City) for the "A C Harbour Account"—the account of the-plaintiff. Prior to the time of payment the plaintiff had requested Cottrell to make sure the policies were transferred to his name as had Mrs. Neal. Both Cottrell and Mrs. Neal had made this request of Mr. Greenwood of the Greenwood Agency. In Mrs. Neal's presence, Mr. Greenwood took down the necessary information to make the transfer. Mr. Greenwood stated at that time that the requested transfer would be handled by his agency. Both Mrs. Greenwood and defendant companies claim that no request for transfer of the policies were made of them.

The policies require that where the policy is assigned it shall not be valid except with written consent of the company. The normal practice was for Mrs. Greenwood (Tri-City) to notify the companies to get their consent. The request to her was usually made orally.

After the policies had been in effect about a year a hailstorm occurred causing loss. A request for payment was made of the companies by the plaintiff. Two of their agents went to Mrs. Neal's (the seller and original applicant for insurance) and offered to give her $12,000 for a release. They wanted the release because the policies were in her name and not in the name of the plaintiff. At the time the offer was made the representatives of the defendant companies knew the title to the land was in the plaintiff and not in Mrs. Neal. She refused this offer as the plaintiff's damage exceeded that amount. The companies admit that Mrs. Greenwood's Tri-City Agency was their agent in these transactions but claim that as neither she nor they had been informed of the assignment nor had consent to it, they are not liable to the plaintiff. After the proffer of payment Mrs. Neal assigned any benefits due her under the policies to the plaintiff.

Defendant companies cite us to a number of fire insurance cases in which this Court has held that an insurance company has the right to contract with whom it wishes and that unless a company agrees to the assignment of a policy the company is not bound. In Brogoitti v. Walter, 43 Ariz. 290, 295, 30 P.2d 835, 837, the reason for this rule is explained as follows:

"This rule is reasonable, for the risk assumed by the insurer depends to a great extent upon the moral character and the circumstances of the insured, and the former has a right to know

with whom it is contracting, and no new party can be thrust upon it without its consent."

This argument may have force in losses where the moral character of the insured is a factor to be considered from an underwriter's standpoint. But this Court has not yet heard of a fraudulently induced hailstorm and the reason for the rule is not applicable to this case.

A decision as to defendant insurance companies is controlled, however, by National Union Fire Insurance Co., Pittsburgh, Pa., v. Epstein, 48 Ariz. 345, 61 P.2d 1010. In that case fire insurance was taken out in the name of the father of seller of the property. After a fire took place the company defended against a suit by the buyers on the ground that it had not consented to an assignment of the policy to the sellers and had no knowledge of the buyer's interest in the land until the time of the loss:

"Whether, however, the facts may be construed as showing concealment by appellee of the ownership of Baskin, Jr., is wholly immaterial in view of the fact that appellant admitted shortly after the fire its liability on the policy. It did this by agreeing that the 'Proof of Loss' filed by Baskin, Sr., showing the loss to be $1,750 was correct, offering to pay it and, in fact, depositing this sum in court in settlement of the claim, all of which was done after the company had been advised by M. H. Baskin, Sr., himself in his 'Proof of Loss' that the legal title to the property was then in M. H. Baskin, Jr. The company could not admit liability on the policy in any sum and by so doing limit its obligations thereunder, because if it was liable at all, it was liable for the full amount of the loss, whatever that might be, that is, up to the extent of the policy. It was not offering to pay as a gratuity or as a compromise but in settlement of a binding obligation.

"In dealing with Baskin, Sr., in determining the amount of loss after it had learned from him through his sworn statement that he was not the owner of the property but that Baskin, Jr., was, it evidently acted upon the theory that it was justified in doing so because he was named in the policy as the insured and as the vendor of the property. It will be observed, however, that this mistake, for clearly it was nothing more, did not lead it to deny liability on the policy; it waived this error instead and proceeded to confer with Baskin, Sr., in reaching an agreement as to the amount of loss, notwithstanding his known lack of ownership, and in doing so ignored the vendees who had purchased the insur-

ance and paid for it, and who by that time had paid about $3,000 on the purchase price of the property, including the land." 48 Ariz. at 353–354, 61 P.2d at 1013–1014.

■ In the instant case the defendant companies, by attempting to settle the claim with a seller whom they knew to have sold the land to the plaintiff have admitted liability to the plaintiff on the policies up to the policy limits.

■ Plaintiff has also appealed a summary judgment in favor of the Tri-City Credit Corporation Insurance Agency, Inc. It is our opinion that the fact that Mrs. Greenwood took the application for the policy in her husband's office without revealing her identity, was informed of an impending sale, and wrote out a receipt in the name of the new owner are sufficient for the jury to conclude that she could reasonably have expected notice of the sale would be given to her husband and that she had sufficient facts in her possession to put her on notice that she should inquire if the sale had been made. In such circumstances the jury could conclude that she as the agent of the insurance companies was negligent in not notifying the company of the assignment.

Reversed.

UDALL, V. C. J., and LOCKWOOD, J., concur.