386 P.2d 27

**Marie L. CUMMINGS, Appellant,**

v.

**Eva PRATER, Appellee.**

**No. 7115.**

Supreme Court of Arizona.

In Division.

Oct. 24, 1963.

Rehearing Denied Nov. 19, 1963.

Charles Christakis, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, by Frank E. Flynn, Phoenix, for appellee.

BERNSTEIN, Chief Justice.

Appellant was plaintiff in a suit for personal injuries. Summary judgment was entered for defendant and it is from that judgment that plaintiff appeals.

In considering the motion for summary judgment, this Court must take that view of the evidence most favorable to the plaintiff and give the plaintiff the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, the evidence is such that reasonable men might reach different conclusions as to whether there is a genuine issue as to any material fact the

judgment must be reversed. Harbour v. Reliable Insurance Company, 94 Ariz. 344, 385 P.2d 220.

Plaintiff had rented an apartment from defendant on an oral lease and moved in the first week in September, 1957. She had been in the apartment three or four days before the accident. The apartment had a side door opening on to a path which led to an alley where the garbage cans were located. Plaintiff had not previously used the side door. On the path were a series of concrete slabs. The first of these slabs was close to the step from which one would step down to the path from the side door. It was irregular in shape and its edges were worn and jagged. It was several inches higher than the level of the path.

A little after 11:00 p. m. on the night of the accident, plaintiff went out the side door for the first time. She was on her way to put garbage in a can in the alley. The only light there was came from a street lamp in the alley. While it was not pitch dark, the lighting was extremely dim. Plaintiff was injured when she stepped down to the path and fell over the concrete slab. She had not examined the premises carefully and had no previous knowledge of the existence of the slab.

In his order granting the summary judgment the trial judge ruled:

"On page 60 of her [plaintiff's] deposition she positively identifies her Ex-

hibit A [a photograph] to said deposition and affirmatively stated that the condition reflected in Exhibit A is a true representation of the condition which existed as of the time of the accident. From an examination thereof the unverified allegation of undisclosed hazards must give way to the positive sworn testimony of the plaintiff which discloses that the condition then existing was clear and open to one who chose to look. This being a landlord and tenant situation, the plaintiff took the premises and the approaches thereto as she found them, there being no hidden defects."

In its inception, the general rule was that in the absence of an express contract a tenant took the demised premises as he found them and the maxim caveat emptor (or more precisely caveat lessee) applied. Middleton v. Green, 35 Ariz. 205, 276 P. 322; 2 Underhill on Landlord and Tenant, Sec. 477. As it was put by an English judge in Robbins v. Jones, 15 C.B.N.S. 221, 240, 143 Eng.Rep. 768, 776 (1863):

" * * * There is no law against letting a tumbledown house."

This stringent rule was and is an exception to general negligence law but has been relaxed in many jurisdictions, including Arizona.

In Middleton v. Green, 35 Ariz. 205, 209–210, 276 P. 322, 324, recently cited with approval by us in Spain v. Kelland, 93 Ariz. 172, 379 P.2d 149, where we adopted the "public use" doctrine and imposed liability on a landlord for negligent condition of the premises, we said:

" * * * This is the general rule, but to it there is a well-recognized exception * * * and is stated by Underhill on Landlord and Tenant, Vol. 2, page 792, * * *. The landlord who lets the premises in a dangerous condition * * * may be liable for injuries resulting from the dangerous condition * * *. The rule * * extends to any unsafe or dangerous condition of the premises. Thus, the owner of premises who, knowing them to be unsafe and dangerous, demises them in that condition without providing for their repair will be liable for damages which are caused by the injury * * *.' "

The theory of liability in the Middleton case was "nuisance" rather than negligence.[1] In city of Yuma v. Evans, 85 Ariz. 229, 234, 336 P.2d 135, 139, we said:

---

1. Courts have used a number of devices to avoid the harshness of the rule of caveat lessee, see e. g. Pines v. Perssion, 14 Wis.2d 590, 111 N.W.2d 409 (liability imposed because of an implied warranty); Holzhauer v. Sheeny, 127 Ky. 28, 104 S.W. 1034 (liability imposed because of "deceit"); Wilcox v. Hines, 100 Tenn. 538, 46 S.W. 297, 41 L.R.A. 278 (caveat emptor applies only where cause of action is in contract—not in tort).

"It is the general rule that a landlord may not be charged with responsibility for a defective condition unless he had actual knowledge of the condition, *or that it has existed for such a period of time as to justify the conclusion that, in the exercise of ordinary care, he should have known of its existence* within such time as would have given him a reasonable opportunity to make repairs." (Emphasis added)

But in Johnson v. O'Brien, 258 Minn. 502, 504-507, 105 N.W.2d 244, 246-247, 88 A.L.R.2d 577, the Court said:

" * * * the liability of a landlord 'is not restricted to those instances where the lessor has actual knowledge of the dangerous condition of the premises, but includes those cases where he has information which would lead an ordinarily reasonable man to suspect that danger exists,' * * * 'The liability for concealing or failing to disclose a dangerous condition unknown to the lessee *is based on the theory of negligence.'*" (Emphasis added)

* * *

"We agree with the trial court that 'To require one to use that care which an ordinarily prudent person would exercise under the same or similar circumstances can hardly be onerous, unreasonable or oppressive.'"

The Court then overruled previous Minnesota cases as follows:

"To the extent that the rule in these cases might be interpreted as meaning that only actual knowledge of defects on leased premises constitutes a prerequisite to the liability of a landlord, they are expressly overruled."

See also Freitag v. Evenson, Or., 375 P.2d 69, 70.

"We are aware that 2 Restatement, Torts, Chapter 13, § 358, subscribes to the rule that the landlord must have actual knowledge of the defect before liability can be imposed. The more prevailing thought, which we adhere to, has been that the landlord can be held if he possesses knowledge which would lead a reasonable man ' * * to suspect the existence of the dangerous conditions as well as when he actually knows of them * * *.' 1 Tiffany, Landlord & Tenant, supra, page 568."

2 Harper and James, The Law of Torts,. Sec. 27.16 expresses the following rule as most consistent with general negligence theory:

"So far as negligence is concerned the one who has control of real or personal property must generally inspect it to discover conditions dangerous to other persons. Exceptions which afforded. special protection in some types of relationships, [including an occupier of

land] have been steadily giving way. In a fairly analogous situation the occupier of land owes the duty to inspect his premises to people who come on it for purposes mutually beneficial to both occupier and entrant. There seems to be no good reason why either the voluntary character of the leasehold relationship or the traditional attitude toward land ownership should differentiate these cases."

\* \* \*

"It is not therefore surprising to find a tendency among cases in the present field to hold a landlord who knows of the conditions that later cause injury, and has good reason to suspect their potentiality for harm, for his nondisclosure of the situation even though he himself believes it to be safe."

And see Prosser Law of Torts, Sec. 80; Restatement of Torts, Sec. 358, Comment a, Illustration. We think this to be the modern rule [2] most consistent with withdrawing special protection from tort liability where the social and economic reasons for that protection no longer exist.[3]

"There would seem to be a temporary aspect to the leasing of most homes today, whether furnished or unfurnished. Land ownership has become an almost traditional goal. One seldom finds the permanence with ties much like allegiance which characterized the landlord-tenant relationship in its·feudal origin. Instead factors appear similar to those discussed with respect to chattels. The landlord has a broader impact upon society. The landlord through continuity and familiarity is in a position to more efficiently ascertain the condition of the premises."

\* \* \*

"It is the glory of American civilization that it is animated by a spirit of progress. It is constantly striving to lead humanity toward a higher goal in things both material and moral, and we believe the courts of the land, instead of acting as a drag on the wheels of social justice, merely because there is no precedent for the action required, should apply the principle that wherever there is a right there is a remedy, and use their power to protect that right effectually, even if in so doing they are forced to broaden their definitions and extend their jurisdiction over a field which was not previously covered, either because it did not exist, or was not properly understood in the past."

2. As is so often the case, the modern rule had an early genesis. See, e. g., Cutter v. Hamlen, 147 Mass. 471, 18 N.E. 397, 1 L.R.A. 429 (1888) "The actual holdings in the cases lead to this result: The landlord, as a rule, need not, before leasing the premises, look for defects therein. But if he has knowledge of facts that would lead a reasonable man to suspect that defects actually exist, he should disclose such facts to the prospective tenant \* \* \* he cannot close his eyes to facts that would lead a reasonable man to act."

3. As was said by Justice Alfred C. Lockwood in Grand International Brotherhood of Locomotive Engineers v. Mills, 43 Ariz. 379, 398, 31 P.2d 971, 978–979:

"Ignorance seems hardly the goal to set for the landlord". Note, Landlord and Tenant: Defects Existing at the time of the Lease, 35 Ind.L.J. 361, 369, 372 (1960).[4]

We hold, therefore, that the landlord is under a duty of ordinary care to inspect the premises when he has reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the tenant of their existence.[5] In other words he is under the duty to take those precautions for the safety of the tenant as would be taken by a reasonably prudent man under similar circumstances. Our attention has been directed to Pena v. Stewart, 78 Ariz. 272, 278 P.2d 892, in support of the doctrine of caveat emptor. Although the Pena case discusses that question, the holding in the case is that the evidence of causation was so conjectural that it was not sufficient to support the cause of action.

The landlord testified on deposition she knew of the presence of the concrete slab at the time plaintiff moved into the apartment. She testified she had used the side door after the slab was put down. She also testified that the slab had not been changed since it had been put down. The record does not disclose any warning by the defendant of the existence of the slab.

■ The only issue in the case is whether the condition of the slab was of such a nature that in the exercise of ordinary care the defendant was under a duty to warn plaintiff of its existence or to repair the condition. People can get hurt on almost anything. But the mere fact of injury does not compel the conclusion that the condition was unreasonably dangerous. And the extent of the landlord's duty is to be measured against the unreasonableness of the danger of the condition.[6] One of the tests used in determining whether a condition is unreasonably dangerous is

---

4. Harkrider, Tort Liability of a Landlord, 26 Mich.L.R. 260, 260–261, the author states: "In seeking an explanation for this rule some light is shed by considering the status of the parties in the days when this phase of the law was being moulded into form. The landlord was a man of great wealth and consequent power and influence. The tenant was commonly a menial servant with a very limited power of choice in selecting his humble home. The common law judges largely represented the landowning class. It is only natural to find that these intangible affiliations and prejudices were

reflected in the law." And see James, Accident Liability Reconsidered: The Impact of Liability Insurance, 57 Yale L.J. 548.

5. Harper and James, supra, Sec. 27.13 "The gist of the matter is unreasonable probability of harm in fact. And when that is great enough in spite of full disclosure, it is carrying the quasi-sovereignty of the landowner pretty far to let him ignore it to the risk of life and limb."

6. Keeton, Personal injuries resulting from open and obvious conditions 100 U of Pa. L.Rev. 629.

whether it is "open and obvious" or as it has been better put:

"If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight."

Harper and James, supra. Sec. 27.13.

Of course, the bare fact that a condition is "open and obvious" does not necessarily mean that it is *not* unreasonably dangerous. Harper and James, 27.13. The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous.

 In the instant case the photographs clearly portray the condition of the premises and the position of the slabs. Both the trial court and this court may consider these photographs. Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772. But cf. Coyner Crop Dusters v. Marsh, 91 Ariz. 371, 372 P.2d 708. The photographs show proven physical facts: that the slabs are of the same type placed in the same manner, and are in the same condition as are thousands of other stepping stones in the community. These facts taken with the depositions, pleadings and affidavits show that no reasonable man could come to any conclusion other than that there was no issue of fact to be tried. Maloy v. Taylor, 86 Ariz. 356, 346 P.2d 1086. The slabs do not constitute a condition that is unreasonably dangerous and defendant may assume the tenant is likely to take perfectly good care of himself and the chances of harm are slight.

Defendant states that plaintiff's cause of action is barred because she amended her complaint with permission of the court after the Statute of Limitations had run. As defendant has not filed a cross appeal this question is not properly before us and cannot be considered.

Affirmed.

UDALL, V. C. J., and LOCKWOOD, J., concur.