501 P.2d 17

Billy PRESSON, guardian ad litem of Laurie Ann Presson, a minor, Appellant,

v.

MOUNTAIN STATES PROPERTIES, INC., an Arizona corporation, Appellee.

No. I CA–CIV 1606.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 26, 1972.

Rehearing Denied Nov. 13, 1972.

Review Denied Dec. 12, 1972.

William B. Revis, Phoenix, for appellant.

Renaud, Cook, Miller & Cordova, P. A., by Richmond Kelly Turner, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal from a motion for summary judgment granted in favor of defendant-appellee, Mountain States Properties, Inc. (herein called defendant) and against plaintiff-appellant, Billy Presson as guardian ad litem of Laurie Ann Presson, (the latter herein called plaintiff).

The facts which are necessary for disposition of this appeal have been obtained in the main from six depositions which the trial court considered at the time judgment was entered in favor of the defendant. The following is a statement of the case in the light most favorable to the party against whom summary judgment has been entered. Harbour v. Reliable Insurance Company, 94 Ariz. 344, 385 P.2d 220 (1963).

On or about July 12, 1968 Bill Presson leased from the defendant premises located at 1303 East Indian School Road, Phoenix, for rent of $78 per month. Mr. Presson had inspected the premises for approximately twenty minutes before signing the lease which contained no provision regarding duty to repair defects that arose which were not due to the lessee's negligence. The instrumentality which subsequently caused the harm to plaintiff was a water heater which was disconnected at the time Mr. Presson inspected the home. Upon completion of moving into the premises Mr. Presson ignited the pilot light of the water heater. However, approximately three days later the pilot went out and at this point, while endeavoring to relight it, Mr. Presson's eyebrows, eyelashes, hair and sideburns were singed.

At Mrs. Presson's deposition she stated that she called Mr. James Anderson, vice-president of defendant corporation, and complained about their difficulty with the hot water heater. Mr. Anderson requested

an Arizona Public Service maintenance man to inspect the water heater. Mrs. Presson further testified at deposition that the serviceman appeared, made the inspection, and said the water heater was defective and needed to be replaced. A few months passed without incident and without any repair. Subsequently the pilot light went out again and Mr. Presson asked for a meeting with defendant corporation's officers. At this meeting Mr. Presson requested Mr. James Anderson to have the water heater either replaced or repaired, and that he have a hole in the floor repaired. The latter complaint was satisfactorily taken care of but the water heater was not fixed. Approximately one month later live steam and water began to flow forth when the hot water valves were opened. The Pressons first noticed this change when steam was spewing out of the back of their washing machine. Shortly thereafter Mrs. Presson scalded her scalp while washing her hair with the hot water from a faucet. Once again request was made upon defendant corporation to remedy the situation, but Mrs. Presson testified that Mr. James Anderson told her that they "did not put money back into rentals", consequently there would be no repair forthcoming. Furthermore, Mr. Presson testified that James Anderson told him that he had the option of moving if he was not satisfied with the condition of the premises, with the caveat, however, that the Pressons would still be liable for the rent for the balance of the lease term. At deposition there was further testimony by Mr. Presson that he warned all of his children to be careful when they used the hot water. However, on March 21, 1969 plaintiff, then a nine-year old, was washing the supper dishes when hot water and steam from the kitchen faucet broke the bottom of a glass pitcher which she was holding and caused second and third degree burns upon the right side of her body, particularly in the area of her groin. As a result, plaintiff was hospitalized for eight days and missed over five weeks of school.

The depositions of the president and vice-president of defendant corporation virtually controvert the entire factual setting that the plaintiff has asserted. In essence, the defendant corporation, through its officers, stated that they had no knowledge whatsoever of any problems that the Pressons had encountered with their water heater in their leased home until they were served with summons and complaint in the instant case.

On appeal, we are asked to determine the following questions:

1. Does the landlord have a duty to exercise due care in making the residential premises leased reasonably safe for habitation?

2. Did the trial court err in granting summary judgment in favor of the defendant?

It has been stated by the defendant that in Arizona a landlord is obliged to either warn a tenant of latent defects or repair them. It is apparent that neither party to this appeal seriously contests that the defect in the water heater was latent because it could not be discovered by the tenant upon inspection if the water heater was not connected at that time. Defendant's main contention is that Arizona law imposes only a duty to warn or repair, the former of which would be unnecessary given the fact that it was the tenant who had actual knowledge of the defect and that he informed the defendant. The defendant states that the duty to repair is not mandatory or obligatory.

The crux of this case is the duty, if any, owed by a landlord to a tenant to make the premises demised fit for habitation. The most recent pronouncement of our Supreme Court on the subject of landlord's liability to exercise due care for a tenant's safety is Cummings v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963). In Cummings plaintiff-tenant sued defendant-landlord for injuries sustained when she slipped and fell on a worn and jagged concrete slab near the side door of her apartment. At the time of the fall plaintiff had been a resi-

dent of the apartment only three days and had not used the path to her side door. In affirming a summary judgment in favor of defendant the Supreme Court held that the duty owed by a landlord is to warn the tenant of, or to repair unreasonably dangerous conditions, and it was determined that an "open and obvious" defect such as the jagged concrete slab was not unreasonably dangerous. In reaching that conclusion the court made the following statements, which are considered strong pronouncements of the duty a landlord owes to a lessee:

"* * * As it was put by English judge in Robbins v. Jones, 15 C.B.N.S. 221, 240, 143 Eng.Rep. 768, 776 (1863):

'* * * There is no law against letting a tumbledown house.'

"This stringent rule was and is an exception to general negligence law but has been relaxed in many jurisdictions, including Arizona.

*　*　*　*　*　*

"'* * * and is stated by Underhill on Landlord and Tenant, Vol. 2, page 792, * * * "The landlord who lets the premises in a dangerous condition * * * may be liable for injuries resulting from the dangerous condition * * *. The rule * * * extends to any unsafe or dangerous condition of the premises. * * *"'

*　*　*　*　*　*

"* * * he [landlord] is under the duty to take those precautions for the safety of the tenant as would be taken by a reasonably prudent man under similar circumstances. * * *" 95 Ariz. at 23, 26, 386 P.2d at 28.

Defendant contends that Pena v. Stewart, 78 Ariz. 272, 278 P.2d 892 (1955) sets forth the rule of law in Arizona regarding liability of a lessor for injuries to the tenant's family from defective fixtures on the leasehold premises. The Pena case which espoused the doctrine of caveat emptor was distinguished in Cummings by the Supreme Court as a case wherein the causation of

harm to the tenant by lack of due care of the landlord was not proved.

We recognize that other jurisdictions have imposed upon a landlord the duty to make the premises demised fit for habitation. Lemle v. Breeden, 51 Haw. 426, 462 P.2d 470 (1969); Marini v. Ireland, 56 N. J. 130, 265 A.2d 526 (1970); Javins v. First National Realty Corporation, 138 U. S.App.D.C. 369, 428 F.2d 1071 (1970) cert. denied 400 U.S. 925, 91 S.Ct. 186, 27 L. Ed.2d 185 (1970); Pines v. Perssion, 14 Wis.2d 590, 111 N.W.2d 409 (1961); Horton v. Marston, 352 Mass. 322, 225 N.E.2d 311 (1967) (landlord liable for injury to tenant nine months after occupancy began); Cf. Rogers v. Scyphers, 251 S.C. 128, 161 S.E.2d 81 (1968); Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314 (1965) (tort liability upon builders-vendors).

■ It is the opinion of the Court that a landlord who leases premises for residential occupancy will not be immune from liability under traditional negligence theories if he fails to act as a reasonable man would in holding his tenants safe from injury due to a condition which, in the words of the Cummings decision, is "unreasonably dangerous". Or, as more succinctly stated in a footnote in Cummings:

"* * *

'The gist of the matter is unreasonable probability of harm in fact. And when that is great enough in spite of full disclosure, it is carrying the quasi-sovereignty of the landowner pretty far to let him ignore it to the risk of life and limb.'" 95 Ariz. at 26, 386 P.2d at 31.

■ In residential short-term lease situations, we believe the duty of due care is owed to a tenant throughout the lease period to maintain premises free from "unreasonably dangerous" instrumentalities that could potentially cause injury. See Marini v. Ireland, supra, 56 N.J. 130, 265 A.2d at 534. This conclusion follows from the premise that we are a modern and mobile society and the imposition of expenses of repair upon a short-term lessee ignores the

very essential fact that the property is owned by the landlord and he will regain possession with, often times, valuable improvements (herein a new water heater) at the conclusion of the leasehold period if the tenant is tacitly forced to repair in order to live in a leasehold that isn't dangerous.

We recognize that in holding that there is a duty imposed upon a landlord to repair we are extending the concept of duty as defined in Cummings. However, our conclusions are drawn from the implication concerning the lack of wisdom in retaining caveat emptor contained in Cummings which we deem to be most in harmony with modern principles and decisions of other enlightened jurisdictions.

In conclusion, it is not our intention to emasculate landlord responsibility under negligence theory with the contractual theory of implied warranty of habitability. Rather the cases from other jurisdictions are cited for the proposition that the current trend in the law is one of disfavor of caveat emptor (caveat lessee). However, the proper disposition of this appeal does not require a determination of whether an implied warranty of habitability exists in Arizona, as our holding is based upon an extension of Cummings that there is a duty of the landlord to repair "unreasonably dangerous" instrumentalities in the leasehold premises that could foreseeably cause injury to a tenant.

The case at bar presents one of those situations wherein a jury could reasonably have concluded that the probability of harm was so great that a duty was created upon defendant to remedy the hazard. The determination of what constitutes an "unreasonably dangerous" instrumentality is a matter of fact for the jury and, on remand, if the jury concludes that the water heater is in fact in that category, then, as a matter of law, the landlord had a duty to repair which may have been breached if the facts posed by plaintiff are proven to be true, i. e., the defendant had actual knowledge of the unreasonably dangerous condition before the injury occurred.

This cause is remanded for trial where the dispute as to the factual questions which exist may be resolved.

Judgment reversed.

STEVENS, P. J., and CASE, J., concur.