515 P.2d 34

Janice M. BRIERLEY, as surviving spouse of Charles S. Brierley, Deceased, and for and on behalf of the surviving child of Charles S. Brierley, Appellant,

v.

The ANACONDA COMPANY, a Montana corporation, Twin Buttes Mine Division, Appellee.

No. 2 CA–CIV 1391.

Court of Appeals of Arizona, Division 2.

Oct. 26, 1973.

Rehearing Denied Nov. 28, 1973.

Review Denied Jan. 15, 1974.

Davis & Eppstein by Thomas J. Davis, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond by Jack I. Redhair, Tucson, for appellee.

OPINION

HOWARD, Judge.

A judgment entered on a jury verdict in favor of the appellee, defendant below, in a wrongful death action instituted by appellant, plaintiff below, is the subject of this appeal. The major thrust of plaintiff's attack is directed to certain jury instructions either given or refused.[1]

Briefly, the facts are as follows. On January 22, 1971, plaintiff's decedent, a journeyman ironworker, was an employee of the Chapman-Dyer Steel Manufacturing

---

1. One additional claim of error is directed to limitation of cross-examination of a witness.

Company, an independent contractor which had undertaken to construct and install a dust collector system in Anaconda's secondary crusher building at its Twin Buttes Mine site located approximately twenty-five miles south of Tucson. That morning when the decedent reported to work at approximately 8:00 a. m., he was directed by his supervisor to work at the south end of a conveyor belt located in the secondary crusher building. He was to work on a pipe installation with the supervisor, also a journeyman ironworker, and an apprentice ironworker. The pipe, a fourteen-inch, ninety degree L approximately twelve feet long and weighing approximately 200 pounds, had to be fitted into a dust collector hood located over the south end of the conveyor belt. It was to extend above the hood and connect to another fourteen-inch pipe approximately fifteen feet above the conveyor belt. In order to do this, the pipe had to be raised by a hoist which was accomplished by placing a choker cable around the pipe with an "eye" at one end and placing the hoist hook through the "eye".

The decedent placed the choker and started to raise the pipe above the conveyor belt. The apprentice was standing on the dust collector hood above the conveyor belt and the supervisor had just climbed upon the hood when the choker slipped and knocked the decedent, who had started the climb up on the hood, on to the conveyor belt which was moving. The supervisor attempted to aid him—he grabbed him under the arms and tried to hold him but was pulled on to the moving conveyor belt himself and sustained serious injuries. The apprentice also tried to assist the decedent but the decedent yelled to him to shut the belt off.

The subject conveyor belt was used to convey ore from the secondary crusher to the coarse ore storage. It was sixty inches wide, approximately one-fourth of a mile long, and traveled at a rate of 425–600 feet per minute. It was equipped with safety pull-cords on each side which ran the entire length of the belt and it took approximately thirty seconds for the belt to come to a complete stop after the emergency pull-cord was activated.

After the decedent yelled to the apprentice to shut off the belt, the apprentice who was on the east side of the dust collector hood jumped down and attempted to reach for the pull-cord located on the east side of the belt but found it missing. He then ran around to the west side of the belt to pull the cord located on that side. It was later discovered that the pull-cord on the east side of the belt had been tied out of reach of anyone who might need to use it. According to the apprentice's testimony, he thought he could have saved the decedent had the pull-cord been in place on the east side of the belt.

There was evidence that employees of Anaconda knew that Chapman-Dyer employees were working over and around and near the conveyor belt. Arrangements to shut down the belt while the men were working had been made but on the morning of the accident, prior to the arrival of the Chapman-Dyer crew, the belt was turned on because Anaconda decided to run ore. The decision to operate the belt was not conveyed either to Chapman-Dyer personnel or to an Anaconda employee whose function was to act as liaison between Chapman-Dyer and Anaconda with respect to scheduling work. The authority to tell Chapman-Dyer employees where and when they could work insofar as this job was concerned was delegated to this liaison man. Chapman-Dyer employees had to accommodate their activities to Anaconda's schedule, i. e. if Anaconda needed to run ore, it did so. Chapman-Dyer employees were required to abide by Anaconda's safety regulations. The decedent was ordered by his supervisor to work on the dust collector hood at the south end of the conveyor belt and his supervisor knew that the belt was operating.

There was no evidence as to why or by whom the safety pull-cord on the east side of the belt was tied back out of reach. An employee of Anaconda testified that some-

times the pull-cords were broken and had to be tied off until an appropriate clamp could be procured. There was testimony that the safety cord had been tied off for several days prior to the accident in question. A.R.S. § 27–313, subsec. B proscribes operations of a machine before a guard or safety device necessary for safe operations which has been removed from any machine is replaced.

Plaintiff contends that the lower court erred in giving one of the defendant's requested jury instructions without having given an additional instruction requested by the plaintiff. These instructions concerned the duty of an owner of land with respect to workmen on the premises. Defendant's response to this contention is that the subject matter was covered by other instructions (plaintiff's requested instructions Nos. 8 and 14) and therefore refusal to give plaintiff's requested instruction No. 15 was not error. We do not agree.

Plaintiff's instruction No. 14, as given, was:

> "I instruct you that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if he knows, or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and fail to exercise reasonable care to protect them against the danger."

Plaintiff's requested instruction No. 15, which was refused, stated:

> "I instruct you that a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee, not-

withstanding its known or obvious danger. In such cases, the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reasons may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position, the advantages of doing so would outweigh the apparent risk."

In the interest of brevity, we deem it unnecessary to set forth plaintiff's instruction No. 8 which was given since it does not relate to a landowner's duty to an invitee but only to the obligation of the employer of an independent contractor when he retains control over the manner in which the work is done.

Defendant's requested instruction No. 3, which was given, stated:

> "You are instructed that an owner of land who retains general supervision of a construction site has a duty to exercise reasonable care to keep the premises in a reasonable, safe condition for workmen who are working thereon and to warn those workmen of any dangers which would unnecessarily expose them to injury. *The owner of land has no duty to warn workmen of conditions which are open and obvious."* (Emphasis ours)

We agree with plaintiff that the refusal to give her requested instruction was error. The instruction is taken from § 343A(1) and comment *f* of the Restatement of

Torts, Second. It is true that our Supreme Court has held that an owner or occupier of premises is not liable for injuries from dangers that are obvious or as well known to the person injured as to the owner or occupant. *See* Daugherty v. Montgomery Ward, 102 Ariz. 267, 428 P.2d 419 (1967). In that case, however, the facts were such that the rule would apply without qualification or modification. The Arizona Supreme Court has not held that the mere fact that a condition is "open and obvious" means that it is not unreasonably dangerous. In the case of Cummings v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963), the court stated:

> "One of the tests used in determining whether a condition is unreasonably dangerous is whether it is 'open and obvious' or as it has been better put:
>
> 'If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight.' Harper & James, supra. Sec. 27.13.
>
> Of course the bare fact that a condition is 'open and obvious' does not necessarily mean that it is *not* unreasonably dangerous. Harper & James, 27.13. The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous." 95 Ariz. at 26, 386 P.2d at 31.

A recent case in this jurisdiction dealing with an occupier's liability for obvious dangers is Murphy v. El Dorado Bowl, Inc., 2 Ariz.App. 341, 409 P.2d 57 (1965), decided by Division One of this court. In *Murphy*, a portion of the bowling alley floor adjacent to the lane being used by the plaintiffs was lower than the surface of the lane. This condition was easily observable, obvious and well known to both plaintiffs and defendant. The trial court directed a verdict for the defendant at the conclusion of the trial and the appellate court reversed. It cited with approval, §

343A(1), supra, and held that whether the presence of the walkway in its condition was negligence was for the trier of fact which could find that the obvious condition was unreasonably dangerous under the circumstances. In the more recent case of Hagan v. Sahara Caterers, Inc., 15 Ariz. App. 163, 487 P.2d 9 (1971), Division One of this court again discussed the duty of an occupier of land to a business invitee. The court held that where the alleged defective condition is open and obvious and persons encountering the condition could be expected to take care of themselves without further precautions on the part of the landowner, and any likelihood of harm was slight, the condition was not unreasonably dangerous, hence no liability on the part of the landowner.

■ Our reading of the Arizona cases leads us to conclude that we have not adopted an arbitrary rule that the possessor of land is under no duty to invitees with respect to open or obvious defects. We are of the opinion that while ordinarily a possessor of land would not be liable (or would not reasonably anticipate an unreasonable risk of harm to an invitee from an open or obvious defect), negligence may exist even though a defect is open and obvious where the circumstances are such that there is reason to believe that it would not be discovered or become obvious to the invitee or that the risk of harm involved would not be anticipated or appreciated by the invitee. Other jurisdictions have adopted the qualifications of the traditional rule expressed in § 343A(1) of the Restatement of Torts, Second. In Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870 (1966), the court stated:

> "Defects in premises which are in no sense hidden and could only be classified objectively as open and obvious, may be of such nature that the possessor should know the invitee would not anticipate or guard against them in using the premises within the scope of the invitation. To arbitrarily deny liability for open or ob-

vious defects and apply liability only for hidden defects, traps or pitfalls, is to adopt a rigid rule based on objective classification in place of the concept of the care of a reasonable and prudent man under the particular circumstances.

. . .

The fact the invitee comes upon the premises after warning of a dangerous condition or knowledge thereof does not qualify the duty of the possessor to exercise reasonable care for the invitee's safety. The fact that by so doing the invitee may assume the risk or become contributorily negligent does not affect or change the duty of the owner. [citation omitted].

It must be kept in mind we are discussing the question of primary negligence of defendant rather than contributory negligence or assumption of risk by plaintiff.

An open or obvious defect might be the equivalent of a trap or pitfall simply because the possessor should know that the invitee would have no reason to anticipate it, appreciate the hazard created by the condition or guard against it." 144 N.W.2d at 874.

Other jurisdictions are in accord: *See* Bonn v. Sears, Roebuck & Company, 440 S.W.2d 526 (Ky.1969); Weber v. Hinds, 440 S.W.2d 129 (Mo.App.1969); Dawson v. Payless for Drugs, 248 Or. 334, 433 P.2d 1019 (1967); Peterson v. W. T. Rawleigh Company, 274 Minn. 495, 144 N.W.2d 555 (1966); Proctor v. Waxler, 84 N.M. 361, 503 P.2d 644 (1972). See also, Sedlock v. Midco Company Hotels Corporation, 421 F.2d 1348 (3rd Cir. 1970); Morgan v. Armour and Company, 425 F.2d 233 (9th Cir. 1970).

■ We are of the opinion that the court erred in giving the "open and obvious" instruction without giving the instruction requested by plaintiff. We agree that there are situations where the possessor of land has no duty to warn an invitee. Such is not the case here. If properly instructed, the jury could have found that

Anaconda should have anticipated that the dangerous condition, *i. e.,* the moving conveyor belt, would cause physical harm to the decedent notwithstanding its known or obvious danger. If such were the case, Anaconda was not relieved of the duty of reasonable care which it owed to an invitee for his protection. This duty might require Anaconda to warn the invitee or take other reasonable steps to protect him against the known or obvious condition if Anaconda had reason to expect that he would nevertheless suffer physical harm. Such duty may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence or assumption of risk. It is not conclusive in determining the duty of the possessor or whether he has acted reasonably under the circumstances. *See* 2 Harper & James, Law of Torts, § 27.13; Prosser, Torts (4th Ed.) § 61, p. 394.

Here it was obvious that the conveyor belt was operating. However, the decedent also knew that there were safety pull-cords on each side of the belt which, when activated, would stop the belt. There was no evidence that he knew one pull-cord was tied off. Thus the jury could find that he did not appreciate the risk of harm. Furthermore, he had been ordered to perform the work he was engaged in at the time of the accident, and the trier of fact could reasonably conclude that the economic advantage to him outweighed any apparent risk of harm.

■ We hold, therefore, that under all the facts and circumstances of this case, the instructions were insufficient to apprise the jury of Anaconda's duty. The court has the responsibility to instruct the jury on all phases of the law supported by the evidence. Towers v. Johnson, 11

Ariz.App. 455, 465 P.2d 592 (1970). The court's failure to instruct on a legal theory within the issues of the case which was supported by substantial evidence is reversible error. Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47 (1967).

Judgment reversed and the cause remanded for a new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.