481 P.2d 876

Ethel Louise MIMS, individually and as next
friend of Wanda Louise Mims, Mona Lynne
Mims, and Jeffrey Ross Mims, Appellants,

v.

VALLEY NATIONAL BANK, a national
banking association, Appellee.

No. 1 CA–CIV 1034.

Court of Appeals of Arizona,
Division 1,
Department A.

March 15, 1971.

Rehearing Denied April 22, 1971.

Review Denied May 25, 1971.

Lewis & Roca, by John P. Frank, Peter D. Baird, and Gerald K. Smith, Phoenix, for appellants.

Snell & Wilmer, by Mark Wilmer, Phoenix, for appellee.

RIDGE, Judge of the Superior Court.

Plaintiffs, beneficiaries of a testamentary trust, sued defendant, the executor and testamentary trustee for breach of fiduciary duty and loss of trust assets. Defendant moved for summary judgment on grounds hereinafter described, and defendant was granted summary judgment. This is an appeal from the order of the Maricopa County Superior Court granting defendant's motion for summary judgment. Appellants are the plaintiffs Ethel Louise Mims, individually and as next friend of her three minor children, Wanda Louise Mims, Mona Lynne Mims, and Jeffrey Ross Mims. The defendant-appellee is the Valley National Bank.

The complaint filed on June 24, 1965 alleges that the Last Will and Testament of Atticus Hugo Mims, established a testamentary trust, the beneficiaries of which were appellants, and the designated executor and testamentary trustee was the

Valley National Bank (hereinafter referred to as Bank); that the assets of said trust estate included shares of stock which constituted a majority interest in two corporations, namely, Sportswear Mfg. Co. and Thunderbird Fashions, Inc. (hereinafter called selling corporations); that the assets of said corporations were, after the commencement of probate proceedings, sold to Thunderbird Manufacturing, Inc. (hereinafter called purchasing corporation); that the estate sustained great losses during the Bank's executorship and trusteeship, and that the Bank is responsible to appellants for these losses by reason of certain alleged acts of malfeasance and nonfeasance on the part of the Bank in its fiduciary capacity as executor and trustee. The Bank's answer and its arguments in support of summary judgment allege that it was discharged from any liability by reason of court orders which approved and settled the Bank's accounts both as executor and trustee, and further allege that all of the complaints of appellants stem from action or lack of action by the board of directors of the two selling corporations rather than from any conduct of the Bank.

The pertinent chronology, commencing with the death of the testator on May 7, 1958, is that the Bank, having been named as executor, took possession of the estate assets on June 27, 1958; then in the fall of 1958, the selling corporations sold their assets to the purchasing corporation, the sale contract being approved by shareholder action which included the Bank's vote of approval in its capacity of executor as holder of the majority of stock in both selling corporations. Thereafter, during the Bank's executorship (amended decree of final distribution was entered on May 22, 1961, and the Bank was finally discharged as executor on November 29, 1961) the purchasing corporation encountered progressively worsening financial difficulties culminating in a petition for bankruptcy on August 16, 1962 (during the Bank's trusteeship). The entire loss claimed by appellants was sustained prior to the Superior Court order approving the Bank's Third Annual Amended Account on September 30, 1964. The judicial administration of the estate, that is the probate proceedings and the administration of the testamentary trust, were conducted in the Yavapai County Superior Court.

The facts upon which appellants rely to support their claims against the Bank are set forth below: [The record before the trial court on defendant's motion for summary judgment includes these items, which must be taken as true for the purposes of determining defendant's motion and this appeal. Cavanagh v. Kelly, 80 Ariz. 361, 297 P.2d 1102 (1956); Harbour v. Reliable Insurance Company, 94 Ariz. 344, 385 P.2d 220 (1963)]

(a) The purchasing corporation agreed to pay $99,071.21 to the selling corporations in monthly installments, and this purchase price was guaranteed individually by the officers of the purchasing corporation, and the purchasing corporation pledged its stock to the selling corporations.

(b) Between March, 1959 and October, 1960, the Bank, in its capacity as a lending institution, made several loans to the purchasing corporation. These consisted of two $5,000.00 loans, represented by promissory notes, and a revolving line of credit in the amount of $50,000.00. These loans were made at a time when the purchasing corporation owed large amounts of money to the selling corporations. The revolving line of credit was secured by an assignment of the purchasing corporation's accounts receivable, and all of the loans were secured by the personal guarantees of the same persons who had guaranteed the obligations due and owing to the selling corporations.

(c) In April, 1961 when the financial distress of the purchasing corporation was known to the Bank, the Bank approved a two-year moratorium on all payments of principal due to the selling corporations under the sales agreement. No moratorium was granted on the amounts owed to the Bank from the outstanding loans.

(d) Within a few months after the execution of the sales agreement, the Bank participated in the approval of substantial salary increases for two officers of the purchasing corporation.

(e) Though permitted by the sales contract to place a member on the purchasing corporation's board of directors, the selling corporations and/or the Bank never exercised this right.

(f) Appellants, while relying on the Bank for information as to the status of the purchasing corporation, were either (1) not fully and accurately informed, or (2) were intentionally or unintentionally misled as to the purchasing corporation's condition.

(g) The Bank did not initiate any action to have the two selling corporations exercise their contractual right to terminate the contract and reacquire their assets. The Bank may have failed to cause the selling corporations to vote the pledged stock of the purchasing corporation in accordance with the agreement's terms (if the purchasing corporation's net assets fell below $75,000.00, the selling corporations were then entitled to vote the pledged stock of the purchasing corporation).

■ While the Bank disagrees with some of these allegations on a factual basis, it mainly relies on two arguments which are claimed to obviate the necessity of any fact determination of the truthfulness of these allegations. The Bank argues that it did not have, as a matter of law, control of the two selling corporations and therefore is not responsible to appellants for any losses which they may have sustained. Ordinarily, the board of directors of a corporation represent the corporate body and is entrusted with authority to conduct the corporate business and manage the corporate affairs. 18 Am.Jur.2d Corporations, § 484. However, this general legal principle does not eliminate the possibility of actual control by another, as for example, a majority shareholder. It must be recognized that a majority shareholder not only has the ability but the right to manage and control a corporation. 13 Fletcher, Cyclopedia Corporations 2d § 5783 (1961), and Gidwitz v. Lanzit Corrugated Box Co., 20 Ill.2d 208, 170 N.E.2d 131 (1960).

■ Further, it appears that such control may result in the creation of a fiduciary responsibility. Steinfeld v. Nielsen, 12 Ariz. 381, 100 P. 1094 (1909). The Arizona Territorial Supreme Court in that case declared that:

"Steinfeld (i. e., the majority stockholder) was neither an officer nor director of the corporation, yet, as found by the court, he dominated and controlled its affairs through the board of directors. Although we are not cited to any authority in point, we have no hesitation in holding that Steinfeld, because of his power over the board of directors and the affairs of the company, and the domination which the findings show he actually exerted over the corporation, sustained such a relation to the company, and to the stockholders of the company, as does an officer or director having such management and control, and that therefore he occupied such a fiduciary relation to the company and to the stockholders of the company as he would have sustained had he been such officer or director." 12 Ariz. at 402, 100 P. at 1101, 1102.

The Territorial Supreme Court was reversed on procedural grounds by the United States Supreme Court, 224 U.S. 534, 32 S.Ct. 609, 56 L.Ed. 872 (1912). Thereafter the Supreme Court of the State of Arizona in Steinfeld v. Nielsen, 15 Ariz. 424, 139 P. 879 (1914), satisfied the procedural requirements. The Arizona Supreme Court in that case found that the majority stockholder's domination of a mining company was absolute and stated:

"Possessing such unlimited power over the mining company, he ought to be held to owe the same standard of conduct towards the stockholders of the company as is due from an officer or director." 15 Ariz. at 444, 139 P. at 887.

We adopt the above-quoted statement from the Territorial Supreme Court's opinion as being a correct statement of the law. See also Garrett v. Reid-Cashion Land and Cattle Co., 34 Ariz. 245, 270 P. 1044 (1928).

In this case we believe the record raises a factual issue as to whether the Bank had actual control over the selling corporations, and thus the claimed absence of control cannot be the ground for granting summary judgment.

What appears to be the Bank's main contention and the argument which was accepted by the trial court is that regardless of any possible wrongful conduct, the Bank cannot, as a matter of law, be responsible to appellants in damages for acts occurring during the administration of the estate, inasmuch as the Bank's responsibility terminated with the entry of orders approving and settling the Bank's accounts both as executor and trustee.

In this regard, the Bank first relies on the provisions of A.R.S. § 14-704, which provides, in part: " * * * the decree is conclusive of the rights of heirs, legatees or devisees, subject only to appeal * * *."

Next, the Bank cites A.R.S. § 14-710:

"A. When the estate has been fully administered, and it is shown by the executor or administrator by the production of vouchers, that he has paid all sums of money due from him, and delivered under the order of the court all property of the estate to the parties entitled thereto, and performed all acts required of him, the court shall discharge him from all liability to be incurred thereafter."

On their face, standing alone, these statutes appear to support the argument of the Bank. However, when read in conjunction with other statutes and case law applicable to this case, it becomes clear that the Bank is not insulated from future personal liability by reason of probate court orders approving and settling its accounts.

The additional statutes which bear on this matter are:

A.R.S. § 14-302 Administration and settlement as single proceeding *in rem.*

"For the purpose of jurisdiction, the administration of the estate of a decedent from filing the petition for letters testamentary or of administration to the decree of final distribution and discharge of the last personal representative, shall be deemed one proceeding in rem, and notice other than that required for hearing on a petition for letters testamentary or of administration shall not be jurisdictional."

A.R.S. § 14-606 Liability for neglect or misconduct in making sale and for fraudulent sale.

"A. If there is neglect or misconduct in the proceedings of the executor or administrator in relation to a sale by which any person interested in the estate suffers damage, the party aggrieved may recover the damages in an action upon the bond of the executor or administrator, or otherwise."

A.R.S. § 12-545 Bond of personal representative or guardian; four year limitation.

"An action on the bond of an executor, administrator or guardian shall be commenced and prosecuted within four years after the death, resignation, removal or discharge of such executor, administrator or guardian, and not afterward."

A.R.S. § 14-302 clearly limits probate jurisdiction to *in rem* matters and divests the Arizona probate courts of whatever *in personam* powers they might have been exercising. The probate court therefore is a court of limited jurisdiction and if it purports to act outside its statutory jurisdiction, its decrees are null and void. In re Estate of Milliman, 2 Ariz.App. 155, 406 P.2d 873 (1965), vacated on other grounds 101 Ariz. 54, 415 P.2d 877 (1966). This principle is stated in different language in Vargas v. Greer, 60 Ariz. 110, 131 P.2d 818 (1942):

"Probate proceedings being purely statutory, and therefore special in their na-

ture, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. (citations omitted)." 60 Ariz. at 117, 131 P.2d at 821.

It thus being clear that a court acting in its probate capacity is limited to the disposition of *in rem* matters, it next becomes necessary to determine whether probate court orders being of an *in rem* nature can terminate any personal responsibility the Bank may have to appellants. We think not.

The distinction between *in rem* and *in personam* matters is explained in Hanson v. Denckla, 357 U.S. 235, 246, n. 12, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). "A judgment in personam imposes a personal liability or obligation on one person in favor of another. A judgment in rem affects the interests of all persons in designated property." This distinction has been adopted not only by the Restatement but also by the Arizona courts. Restatement of Judgments, Introductory Note, (1942); Hook v. Hoffman, 16 Ariz. 540, 551, 147 P. 722, 727 (1915) (" * * * an action in the nature of a proceeding in rem * * * authorizes the courts of this state, so far as such property is affected only, to bind all persons with respect to their interest in such property * * *.").

There appears to be no question here but that the relief sought by appellants against the Bank is of an *in personam* nature. There is not here any designated property which is the subject of this dispute, but rather an effort by appellants to recover a money judgment against the Bank for its alleged misconduct.

The conclusion arrived at by this reasoning process is supported by authority from

2 Bancroft's Probate Practice § 367 (2d Ed. 1950), which declares that "it is * * * no part of the jurisdiction of the probate court to try tort actions against a representative, and his liability, being individual is not affected by the settlement of his accounts in probate." This result is further bolstered by joint reading of A.R.S. § 14-606, subsec. A and A.R.S. § 12-545, which together provide an action upon the bond of the executor or administrator and the length of time (4 years after discharge) within which such action may be brought. The effect of these two statutes cannot be escaped. An executor and its bonding company continue to be subject to suit for misconduct for a period of four (4) years after such executor is discharged.

The Court is not unmindful of those Arizona and California case authorities cited by the Bank which unquestionably support the Bank's position. However, the Arizona cases were all decided before the enactment of A.R.S. § 14-302, and thus did not include a consideration of the distinction between *in rem* and *in personam* jurisdiction of the probate court.

The California cases cited by the Bank have no applicability since the State of California does not have a statute similar to A.R.S. § 14-302.

We also recognize the continuing exposure to which this result subjects executors, administrators, testamentary trustees, and their bonding companies. If this is undesirable as a matter of public policy, then it is for the legislative branch of our government to say.

Insofar as this *res judicata* question is concerned, the Court finds no distinction between the Bank's activities as executor on the one hand and as trustee on the other. Our statutes, particularly A.R.S. §§ 14-1021, subsecs. B and E,[1] leave no doubt

---

1. § 14-1021. Jurisdiction of trusts created by will; accounting by trustee

   &ast; &ast; &ast; &ast; &ast;

   B. The trustee may from time to time, pending execution of the trust, or at the

   termination thereof, render and pray for settlement of his account as trustee before the court in which the will was probated, and in the manner provided for settlement of accounts of executors and administrators. The trustee, or, in case of his death

but that a trustee's accounting is to be handled in the same manner, be governed by the same statutes, and have the same legal effect as in the case with executors and administrators.

Accordingly, it is our conclusion that appellants' action is not barred by the doctrine of *res judicata*, and it is our further conclusion that material fact issues remain for determination.

This cause is reversed for proceedings not inconsistent with this opinion.

STEVENS, P. J., and DONOFRIO, J., concur.

NOTE: The Honorable JAMES DUKE CAMERON was a member of Department A at the time this cause was argued. He requested that he be relieved from consideration of this matter and The Honorable WARREN C. RIDGE, a Judge of the Superior Court, was called to sit in his stead and participate in the determination of this decision.

his legal representative, shall, for that purpose, present to the court his verified petition and report setting forth the account in detail, the condition of the trust estate and the names and addresses of the beneficiaries, if known, and, upon filing thereof, the clerk of the court shall fix a day for the hearing.

\*    \*    \*    \*    \*

E. Upon filing the accounts ordered, the same proceedings for hearing and settlement thereof shall be had as provided in this title with respect to executors and administrators.