513 P.2d 977

Ruth ROBERSON, Individually and as Executrix of the Estate of Marvin Smith Teel, Deceased, Appellant,

v.

Frank TEEL, Individually and as Executor of the Estate of Emma Teel, Deceased; Louise Teel, individually and as Administratrix of the Estate of Emma Teel, Deceased; Julian J. Aberbach; Joachim Jean Aberbach; Great Southern Life Insurance Co.; Welmar, Inc.; American Employers' Insurance Company and United States Fidelity & Guaranty Company, Appellees.

No. 1 CA–CIV 1857.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 11, 1973.

Rehearing Denied Oct. 23, 1973.

Review Denied Nov. 27, 1973.

Robert C. Moore, Phoenix, for appellant.

Lewis & Roca by John P. Frank, Charles Crehore, R. A. Hillhouse, Phoenix, for appellees Aberbach and Great Southern Life Ins. Co.

Cox & Cox by L. J. Cox, Jr., Phoenix, for appellees Teel, Welmar, Inc., American Employers' Ins. Co. and United States Fidelity & Guaranty Co.

## OPINION

JACOBSON, Chief Judge, of Division 1.

This appeal arises out of the trial court's granting defendants' motions for summary

judgment against the plaintiff, who by an independent action sought to set aside various orders and a decree of distribution of the probate court.

The underlying probate proceedings which generated the present litigation, involves primarily the probate of the estate of Emma Teel, deceased. Emma Teel, the widow of W. L. Teel, died in Phoenix, Arizona, in August of 1945, leaving a large estate consisting of real property now located at the southwest corner of Indian School Road and Central Avenue, Phoenix, Arizona. She left three children surviving her, Marvin, Eula and Frank. Marvin and Eula were incompetent. The Phoenix Savings Bank and Trust Company was appointed by the probate court as guardian ad litem for Marvin and Eula in the probate proceedings. Emma Teel's will was admitted to probate on October 30, 1945, and the competent son, Frank Teel (one of the appellees herein) was duly appointed executor of the estate.

Emma Teel's will provided generally that one-third of her estate should pass outright to Frank Teel and that Marvin and Eula were to have life estates in the other two-thirds, with the remainder, upon the death of Marvin and Eula, to go to Frank.[1] A codicil to the will provided:

"I further request that the administrator of my estate keep same open as long as practicable, and during the administration that the administrator procure and the court order that an amount be set aside for the support and maintenance of said children [the incompetents Marvin and Eula] or either of them in the nature of a family allowance, and that that further be handled by said administrator until the estate is closed in such a manner as to supply the wants, needs, and comforts of my said children or either of them . . . ."

On May 1, 1946, Frank Teel was appointed general guardian of the estates and persons of Marvin and Eula.

The administration of Emma Teel's estate lasted until April 11, 1969 and during this 24-year period, Frank Teel, as executor, duly filed annual accountings reciting that since 1946 the estate had been in a condition to be closed except for the provision above quoted dealing with the maintenance of Marvin and Eula. Eula died in 1967 and Marvin died on February 6, 1969. The estate was closed following Marvin's death.

During the course of the administration of the estate on August 8, 1946, the probate court entered an order that all sums used for the support and maintenance of the incompetents, Marvin and Eula, should be charged to their respective distributive shares of the estate. In 1953, Frank Teel purchased a mobile home using $6,825.55 of the estate funds. This mobile home was not accounted for, but the decree of distribution distributed all property belonging to the estate to Frank.

On November 21, 1958, Frank Teel petitioned the probate court for an order of partial distribution of his share of the estate to him. The court on that date ordered that five days' notice of the petition be given. On the same date that Frank had petitioned for partial distribution, he also petitioned to withdraw as guardian of both the person and estate of his incompetent brother and sister. This request to withdraw was granted and on December 2, 1958, an attorney, who was a former member of the law firm representing Frank, was appointed as guardian for the incompetents. On December 3, 1958, the court entered a decree of partial distribution.

Immediately following issuance of this decree of partial distribution, Frank petitioned the court for partition of his one-third interest. The probate court appointed a commissioner who duly reported to the court on the partition petition. After notice and hearing, the probate court partitioned Emma Teel's estate granting to Frank certain unimproved real property lo-

---

1. This construction of the will is contested by appellant in this appeal.

cated at the southwest corner of Central Avenue and Indian School Road.

Frank subsequently entered into a 60-year lease of the property partitioned to him with B & C Investment Company.[2] B & C Investment Company later sold this leasehold to appellees Julian J. Aberbach and Joachim Jean Aberbach (Aberbachs), who with financing obtained from appellee, Great Southern Life Insurance Company, constructed extensive improvements on the property. The lease between Frank Teel and B & C Investment Company called for total rentals to be paid Frank in the sum of $1,080,000.

In 1968, after the filing of a petition and appointment of appraisers, the probate court conducted a sale of an unimproved tract of land belonging to the estate which was adjacent to the leased land. Following spirited bidding between Del Webb Corporation and the Aberbachs, the court, on May 8, 1968, entered its order confirming this sale to the Aberbachs for $665,000.00. This property is also now fully improved.

As previously indicated, the probate court on April 11, 1969, entered its decree of final distribution in the Emma Teel estate. On February 19, 1971, appellant as executrix and sole beneficiary of Marvin's will[3] commenced this independent civil action against the appellees.

By appellant's multiple count complaint, she sought, insofar as is pertinent here, the following relief:

(1) That all the accounts of the executor Frank Teel[4] after December 31, 1946, be set aside; that the orders approving those accounts be revoked; and that appellant have judgment against Frank Teel for one-half the amount of administration costs (allegedly $125,000) incurred since December 31, 1946.

(2) That the decree of partial distribution and the decree of partition entered in 1958 be declared void; that the court decree that appellant's decedent (Marvin) was at the time of his death the owner of one-half of the real property covered by the decree of partition; and that Frank Teel account for all monies received as rentals on the property and that judgment be had against Frank for monies allegedly converted by him.

(3) That the 1968 sale of estate real property to Aberbach be set aside and that the court decree that Marvin was the owner of one-half of that real property at the time of his death.

(4) That Frank Teel account for the mobile home.

(5) That the decree of distribution be set aside and the court declare that Emma Teel died intestate; and that the order of the probate court, charging the distributive shares of Eula and Marvin for their maintenance, be set aside.

Appellee Frank Teel's motion for summary judgment was granted as was appellees Aberbachs' and their successors in interest's motion to dismiss which was treated as a motion for summary judgment. This appeal followed.

Appellant's attack on the probate of Emma Teel's estate can be classified into three general categories: (1) misrepresentation of Emma Teel's will; (2) the validity of orders made in the course of probate; and (3) insofar as Frank Teel is concerned, his fraudulent conduct in administering the estate. Appellant does not contend that there may be other evidence available, not appearing at the time the trial court granted summary judgment which would support these attacks. These

---

2. This corporation is not in any way involved in the subsequent litigation.

3. The validity of Marvin's will was upheld by this court in In re Estate of Teel, 14 Ariz. App. 371, 483 P.2d 603 (1971).

4. In 1968, Frank's wife, Louise, was made a co-administrator of the estate, and like relief was requested against her.

attacks were defended against primarily upon the basis that appellant's independent action was a collateral attack upon the orders, judgments and decrees of the probate court which was not permissible, and on the additional basis of the statute of limitations.

■ Appellant's contention that the probate court misinterpreted Emma Teel's will is based upon the argument the under the will the provision which purportedly gave Frank an undivided one-third interest in the estate and gave Marvin and Eula life estates with Frank Teel as the remainderman, only became operative in the event Emma Teel's husband survived her. The argument continues that since Mr. Teel predeceased Emma, Emma died intestate as to the residue of her estate. It is also contended that the language of Emma's codicil authorizing the payment of support during probate to Marvin and Eula created a trust in their favor and that charging of this support to their distributive shares was improper.

■ The problem immediately confronting appellant is that the court in probating the will of Emma Teel entered a decree of distribution on April 11, 1969, which distributed Emma's estate in a manner contrary to the construction placed upon the will by appellant. Appellant does not attack this decree on the basis that it was obtained by fraud or that the probate court lacked jurisdiction to distribute the estate in such a manner. In other words, appellant alleges no grounds which would allow the court to grant relief from the operation of the decree of distribution under Rule 60(c), Rules of Civil Procedure, 16 A.R.S. Rules. This attack by way of independent action is simply that the probate court misinterpreted the testator's intention and that the estate should have been distributed in a manner more advantageous to the appellant. It has long been settled that "a decree of final distribution is a judicial construction of a will, conclusive upon all heirs, devisees and legatees, and immune from collateral attack unless it is void on

its face." Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229 (1948). It is clear that appellant's independent action is a collateral attack on the decree of distribution, for appellant's action seeks not only to overturn this former decree but further seeks as independent relief the determination that she is entitled to proceeds of Emma's estate and the charging of executor with sums expended for support of the incompetents. *See,* School District No. 1 of Navajo County v. Snowflake Union H. S. Dist., 100 Ariz. 389, 414 P.2d 985 (1966).

Appellant contends, however, that, as stated in her brief, "the validity of a clause in a will may be litigated on petition for distribution; and if plaintiff's decedent was not then represented and may question the final account and petition, then it would follow that he may litigate the meaning of the will." The fallacy in this "lack of representation" argument is that at the time the petition for final distribution was filed appellant's decedent (Marvin) was dead. The persons who then became interested parties as to whether Marvin's estate received its proper share of the Emma Teel estate, were Marvin's beneficiaries—in this case, appellant herself. There is no doubt that appellant had knowledge that she was the sole beneficiary under Marvin's will as early as November, 1958. In re Estate of Teel, 14 Ariz.App. 371, 483 P.2d 603 (1971). Marvin died on February 6, 1969; yet appellant took no steps to protect her interests as an interested party in the Emma Teel estate. If it can be argued that appellant's rights as Marvin's beneficiary were not established at the time of the petition for final distribution because of a will contest, these were adjudicated on March 3, 1970 by a decree of the superior court. In re Estate of Teel, *supra.* Yet she still took no action until February 19, 1971, when she filed the complaint involved here.

■ Assuming for the sake of argument that this is a direct attack on the decree of distribution under Rule 60(c), Rules of Civil Procedure, the failure to bring this

action within six months after appellant's rights as an interested party were established, bars the action. In re Hunter's Estate, 99 Cal.App. 191, 278 P. 485 (1929).

We therefore hold that insofar as appellant's complaint sought an interpretation of Emma's will or the establishment of a trust contrary to the decree of distribution, the trial court properly granted the appellees' summary judgment.

The second area of the probate of Emma · Teel's estate attacked by appellant are various accountings, orders and sales entered by the probate court. These are specified as follows:

(1) Orders of the probate court approving annual accountings of the executor, allowing the estate to remain open for approximately 24 years and incurring administration fees during this period.

(2) The decree of partial distribution and decree of partition setting aside certain estate real property to Frank Teel in 1958.

(3) The sale in 1968 of certain other real property of the estate.

In appellant's attack upon the length of time that Emma Teel's estate remained open, she seeks not only to set aside all of the accounts of the executor after December 31, 1946, but also seeks judgment against the executor for one-half the amount of the administrator's fees incurred since that date. Again, it is clear that this is a collateral attack on the orders of the probate court approving these accounts. School District No. 1 of Navajo County v. Snowflake Union H. S. Dist., *supra*. It is equally clear that an order settling an administrator's account is conclusive except on appeal, and is not subject to collateral attack. Shattuck v. Shattuck, *supra*; Estate of Sullivan, 51 Ariz. 483, 78 P.2d 132 (1968); Gibson v. Gordon, 30 Ariz. 310, 246 P. 1036 (1926).

Appellant contends that this rule is not applicable for two reasons. The first

ground advanced by appellant is that, while no fraudulent conduct of the executor in keeping his estate open is alleged, all orders of the probate court entered after December 31, 1946, were either void or voidable on their face and hence the rule against collateral attack is not applicable. The basis urged for the voidness or voidability of the probate court's orders are that where all the accounts after December 31, 1946, on their face allege that the estate is in a condition to be closed, except for the payment of support to the incompetents, no purpose existed for the continued probate of the estate and hence the court "lost jurisdiction" of the probate. The argument continues that since the probate court "lost jurisdiction" as of December 31, 1946, its orders entered after that time were void.

What appellant has obviously confused is the principle of voidness for lack of jurisdiction, that is, subject matter and personal jurisdiction, and the erroneous continued exercise of that jurisdiction once properly obtained. Assuming, again for the sake of argument, that the probate court erroneously continued to exercise jurisdiction over the probate of Emma Teel's estate after December 31, 1946, such exercise of jurisdiction while being possibly voidable, that is, subject to review by appeal or direct attack under Rule 60(c), Rules of Civil Procedure, or review by special action, did not render such exercise void so as to be opened to collateral attack. Such voidness only occurs where the court attempting to exercise jurisdiction initially had (1) no jurisdiction of the subject matter of the case, or (2) no jurisdiction of the persons involved in the litigation, or (3) no jurisdiction to render the particular judgment given. Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434, 45 P.2d 656 (1935). The jurisdiction of the probate court over the Estate of Emma Teel suffers none of these jurisdictional defects.

The second ground urged by appellant which would allow the collateral attack of

the probate court's orders approving accountings is the rationale of the case of Mims v. Valley National Bank, 14 Ariz. App. 190, 481 P.2d 876 (1971). In *Mims,* Department A of this court held that an action against an executor and trustee for mismanagement of an estate was not barred by orders of the probate court which approved accountings containing the facts of the alleged mismanagement. It appears that the basis for the result reached in *Mims* was twofold: (1) that under A.R.S. § 14–606 an action is allowed against the executor for neglect and mismanagement and (2) that since the probate court's jurisdiction is *in rem* in nature it could not preclude an *in personam* action against the executor. In our opinion *Mims* erroneously interpreted and applied Arizona statutory and decisional law.

A.R.S. § 14–606 provides:

"If there is neglect or misconduct in the proceedings of the executor or administrator in relation to a sale by which any person interested in the estate suffered damage, the party aggrieved may recover the damages in an action upon the bond of the executor or administrator, or otherwise."

█ As is noted, the action by the aggrieved party against the executor is allowed where the neglect or misconduct arose out of a sale of estate property. This statute on its face is not authority for a suit against the executor for neglect and misconduct generally in the administration of the estate. While an executor may be liable for mismanagement of the estate, United States Fidelity & Guaranty Co. v. Greer, 29 Ariz. 203, 240 P. 343 (1925), A.R.S. § 14–606 does not purport to address itself to the issue of whether prior court approval of acts subsequently alleged as being grounds for mismanagement would bar such an action.

*Mims* went on to hold that since the jurisdiction of the probate court is *in rem* in nature, orders of the probate court could not affect the *in personam* liability of the executor. This reasoning confuses two separate and distinct concepts, that is, the ability of a court to bind the world by its orders and the liability one party to an action may have to another party in the same action. In the first concept, the jurisdiction of the court and the scope of its orders are involved. In the second, the nature of the liability is involved. Thus, where the court attempts to impose personal liability or obligation upon one person to another, its jurisdiction to do so depends upon the court's power over the individuals involved. This power is usually invoked by the filing of a complaint and the service of process upon the party against whom relief is sought, with a resultant opportunity to be heard. The persons affected by the court's exercise of its jurisdiction is directly related to the power the court has over those persons. The judgments resulting from such an exercise of power are said to be personal, and the jurisdiction involved is said to be *in personam.* Restatement of Judgments, Chp. 1, Pg. 5 (1942). However, where the exercise of the court's jurisdiction is not to impose a personal liability or obligation upon anyone, but to affect the interests of persons in a thing, the jurisdiction of the court depends not upon the power of the court over the persons involved, but on the court's power over the thing. The judgment resulting from such an exercise of power and the jurisdiction involved is said to be *in rem.* The scope of the court's orders and judgments insofar as they affect individuals' interests in the thing involved likewise does not depend upon the court's power over those individuals and thus may be binding upon the world. As is stated in Restatement of Judgments, § 2, page 12 (1942):

"Where a reasonable opportunity has been afforded to litigate rights of all persons in property before a court which has jurisdiction over the property, and the court has finally determined the rights in the property, the interest of the

state and of the persons concerned require that the rights of the property shall not be litigated again *by anyone."* (Emphasis added.)

The jurisdiction of the probate court in Arizona, by statute, A.R.S. § 14–302, is *in rem.* The property involved in this *in rem* proceedings is, of course, the estate of the decedent. Likewise, the rights of interested parties in that estate, does not depend upon the jurisdiction of the court over such persons, but depends upon its power over the estate. Assuming the probate court properly acquires power over the estate in the first instance, its orders and judgments affecting that estate are binding on the world. The binding effect and scope of the probate court's orders is what was overlooked or confused by *Mims. Mims* attempted to equate the power of the court to properly administer the thing over which it exercises its power —the estate, with the power of the court to impose personal liability on a party interested in that estate. Such an equation is unbalanced and thus the underlying rationale of *Mims* is faulty. We therefore decline to follow *Mims* and hold consistent with prior Arizona Supreme Court decisions, Shattuck v. Shattuck, *supra*; Estate of Sullivan, *supra*; Gibson v. Gordon, *supra*; that orders approving accountings by the probate court are not subject to collateral attack nor are acts of the administrator *which are reflected in such accountings* subject to collateral attack. We hold that the trial court properly granted summary judgment as to that portion of appellant's complaint seeking to set aside accountings of the probate court entered after December 31, 1946.

Appellant next seeks to void the orders of the probate court issuing a decree of partial distribution giving Frank his undivided one-third interest in the estate and subsequently partitioning this one-third interest by granting Frank certain real property of the estate. These orders were all issued in 1958.

What we have previously said concerning the finality and bar to collateral attack of an account is equally applicable to the decree of partial distribution. Appellant contends, however, that the decree of partial distribution is also void for two reasons: (1) the new guardian was appointed only two days prior to the date of partial distribution being entered and therefore the five day notice requirement set by the court was not complied with, and (2) that Marvin did not receive adequate representation at that proceeding. As to the notice contention, assuming appellant's factual contentions are true, this does not render the decree of partial distribution void. A.R.S. § 14–652 provides that notice of a petition for partial distribution be given "to all persons interested in the estate, as required for settlement of the account of an executor or administrator." The only notice required for settlement of an account is "post[ing] in at least three public places in the county . . . ." A.R.S. § 14–664. Moreover, A.R.S. § 14–302 specifically provides "notice other than that required for hearing on a petition for letters testamentary or of administration *shall not be jurisdictional."* (Emphasis added.) If notice is not jurisdictional, obviously the timeliness of that notice would likewise not be jurisdictional and would not render the decree of partial distribution void.

The lack of representation argument is somewhat vague, except insofar as it would tend to support the argument of fraud on the part of the executor which is discussed later in this opinion. It is obvious that under any interpretation of the will, Frank was entitled to an undivided one-third interest in the estate. Numerous accountings had previously been filed which indicated that the estate was in a condition to be closed, that is, all creditors, if any, had been paid. Since Frank was entitled as a matter of right under the statute to obtain his undivided one-third interest, the court is at a loss to know what adequate representation of Marvin would

have been accomplished, assuming that the representation he received was inadequate. In short, Marvin under any circumstances would not have been prejudiced by the decree of partial distribution, distributing to Frank what all parties concede he was entitled to. We therefore hold that the trial court properly granted summary judgment in this regard.

Appellant next attacks the decree of the probate court partitioning the estate and setting over to Frank in fee simple certain real property. This attack is predicated again upon two grounds: (1) that the probate court was without jurisdiction to partition between one heir and the estate and (2) the partition was procured by the fraud of Frank Teel.

▇▇▇ As to the first contention, appellant relies on the language of A.R.S. § 14-723 which provides in part:

"When the estate, real and personal, assigned by the decree of distribution *to two or more heirs*, devisees or legatees, *is in common and undivided* . . . partition and distribution may be made by three disinterested persons who shall be appointed commissioners for that purpose . . . ." (Emphasis added.)

Appellant then argues that since there was not "two or more heirs" who held real property "in common or undivided", the probate court was without jurisdiction to partition between one heir (Frank) and the estate. The problem confronting appellant in making the argument that A.R.S. § 14-723 is applicable, is that this entire section (Article 12, Partition, A.R.S. § 14-721 through § 14-731) becomes operative only when the final decree of distribution has been entered. Thus, A.R.S. § 14-721 provides, "partition may be ordered on petition of any person interested [in the estate]," and while the petition may be filed at any time, "the commissioner *may not be appointed until the decree is made and entered distributing the estate.*" Likewise, A.R.S. § 14-723 by its own terms provides

that it is operative only when the estate "assigned by the *decree of distribution*" is undivided or in common. This statute goes on to provide that the commissioners appointed shall have issued to them "the decree assigning and *distributing the estate.*" That Article 12 is not the exclusive manner in which partition may be accomplished in a probate is clear by the terms of A.R.S. § 14-653, subsec. B dealing with partial distribution before final settlement. This statute provides that if the petition for partial distribution is granted, "[i]n the execution of the order, if a partition is necessary *between two or more interested persons*, it shall be made in the manner prescribed by §§ 14-721 through 14-731." It is clear from the context of the statute dealing with partial distribution which allows distribution to an heir, devisee or legatee of his share or even a portion thereof, that "interested persons" means the petitioning heir to whom distribution has been allowed and all other heirs who may not have, as yet, received their distributive share of the estate. We therefore hold that A.R.S. § 14-653, subsec. B contemplates the partition of an estate under the circumstances presented in this case and the probate court had jurisdiction to enter the decree of partition sought.

▇▇▇ The third contention that the decree of partition was obtained by fraud is founded upon the two alleged fraudulent acts of Frank Teel: (1) procuring the appointment of his own counsel as interim guardian of the incompetent during the partition proceedings, and (2) failing to advise the probate court that the property to be partitioned could be leased for a substantial sum of money. Appellees argue that this independent action is a collateral attack upon the prior decree of the probate court which is barred, even if the grounds alleged are fraud, citing School District No. 1 of Navajo County v. Snowflake Union H. S. Dist., *supra*. We agree that appellant's action is a collateral attack on the prior probate court decree, but to determine whether such a collateral attack is

barred depends upon the type of fraud referred to. It is true that *School District No. 1 of Navajo County* states that fraud will not allow a collateral attack upon a valid judgment, but cites as an authority for that holding the case of Dockery v. Central Arizona Light & Power Co., *supra*. *Dockery* is clear that the type of fraud referred to which will not support a collateral attack upon a valid judgment is intrinsic fraud, that is, fraud which pertains to matters of the judgment itself. On the other hand, *Dockery* is equally clear that extrinsic fraud, that is, fraud which operates upon the manner in which the judgment was procured, is grounds for a collateral attack upon the judgment.[5]

Before we determine whether the fraud alleged here is intrinsic or extrinsic, it is first necessary to determine whether the acts alleged are supportable as being fraudulent.

As indicated, the first fraudulent act attributable to Frank Teel was that he procured the employment of his own attorney as guardian of the incompetents, intimating that such an appointment created such a conflict of interest that the incompetents were deprived of representation and thus the manner in which the decree was obtained consisted of extrinsic fraud. If such an allegation was factually supportable, appellant's position may have some merit. However, it is clear by uncontroverted affidavits, that while the attorney appointed as guardian had at one time been employed by the firm of attorneys representing Frank Teel, that employment had terminated some two years prior to his appointment as guardian. Since appellant seeks to impute fraud from merely the relationship of attorney and client, that imputation must disappear when it affirm-

atively shows that the relationship did not exist.

Likewise, the allegation that Frank Teel failed to disclose the advantageous nature of the lease to the court is subject to the same infirmities. Aside from the fact that there is no affirmative showing that such a disclosure was not made, such a disclosure or lack thereof is, in our opinion, immaterial. The basis of the advantageous nature of the lease entered into by Frank Teel and B & C Investment Company was the fact that the term ran for a period of 60 years.

Assuming that the disclosure of such an anticipated lease was made to the probate court, the court could not have disapproved the petition on that basis for the estate itself could not take advantage of such a lease, it being limited, at that time, to a lease period of ten years only. A.R.S. § 14–1052, subsec. C.[6]

We therefore hold that the trial court correctly granted summary judgment as to those portions of appellant's complaint seeking to set aside the probate court's decree of partition.

Appellant also seeks to set aside a sale on May 6, 1968 by the probate court of a portion of the estate real property on the grounds that no reason existed for such a sale. Appellant's attack on this sale comes too late. A.R.S. § 14–603 provides:

"A. No action may be maintained for the recovery of an estate sold by an executor or administrator under the laws of this state unless it is commenced within one year after the sale.

\* \* \* \* \* \*

"C. A minor or other person under legal disability to sue at the time the right of action accrued may commence

---

5. A Rule 60(c), Rules of Civil Procedure, attack upon a judgment upon the grounds of fraud, being a direct attack, allows either intrinsic or extrinsic fraud as grounds for relief.

6. This statute was subsequently amended in 1961 to allow leases in excess of ten years under certain conditions. *See*, A.R.S. § 14–1052, subsec. C, as amended.

**450**

the action at any time within one year after removal of the disability."

■ The question thus presented, assuming for the sake of argument, that a valid guardianship for Marvin did not exist, is when does this statute of limitations begin to run as to an incompetent who dies without being restored to competency? We hold the rule to be that where a statute of limitation is tolled because of incompetency, the tolling of the statute ends upon the death of the incompetent. Triplett v. Williams, 269 Cal.App.2d 135, 74 Cal.Rptr. 594 (1969). Marvin Teel died on February 6, 1969, at which time the tolling of the running of the one-year limitation of A.R.S. § 14–603 ended. Appellant did not bring her action to set aside this sale within one year thereafter and in fact her action was not brought until February 19, 1971, more than three years after Marvin's death and is therefore barred by the applicable statute of limitations. The trial court properly granted summary judgment as to this count of appellant's complaint.

■ Appellant's last attack deals with the failure of the probate court to require Frank Teel to account for a certain mobile home. We hold appellant simply has no standing to make such an attack. This mobile home was purchased with estate funds and presumably became an asset of the estate. The cost of this mobile home was not charged to Marvin's distributive share of the estate. The court by its decree of distribution, which decree we have previously held is not subject to collateral attack and the time for a direct attack having long passed, distributed the entire estate including the mobile home to Frank Teel. If anyone could be hurt by the failure to account for this mobile home, it would be Frank, not appellant. The trial court properly granted summary judgment as to this count of appellant's complaint.

For the foregoing reasons, the judgments of the trial court are affirmed.

EUBANK, P. J., and HAIRE, J., concur.