IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TM2008 INVESTMENTS, INC., an Arizona corporation; BONNIE VANZANT; JAMES VANZANT, *Plaintiffs/Counterdefendants/Appellants*,

*v.*

PROCON CAPITAL CORP., an Arizona corporation, *Defendant/Counterclaimant/Appellee*.

No. 1 CA-CV 12-0648
FILED 3-27-2014

Appeal from the Superior Court in Maricopa County
Nos. CV2010-009340, CV2010-009350 (Consolidated)
The Honorable Arthur T. Anderson, Judge

**REVERSED AND REMANDED**

COUNSEL

Sanders & Parks, P.C., Phoenix
By G. Gregory Eagleburger
*Counsel for Plaintiffs/Counterdefendants/Appellants*

David C. Larkin, P.C., Tempe
By David C. Larkin
*Counsel for Defendant/Counterclaimant/Appellee*

---

## OPINION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

**W I N T H R O P,** Judge:

¶1 TM2008 Investments, Incorporated, Bonnie Vanzant, and James Vanzant appeal a judgment against them following a jury trial. Appellants identify a number of arguments on appeal, principally that the trial court erred by finding that they necessarily owed fiduciary duties to ProCon Capital Corporation, a fellow member of Doveland Developments, an Arizona limited liability company ("LLC"), and therefore had no liability based on an alleged breach of such duty. For the following reasons, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2007, Bonnie Vanzant and her ex-husband, John Greenbank, owned twenty-two-and-a-half acres of land in Show Low through Silverdove Properties, LLC. The Silverdove land was adjacent to a proposed 54 acre residential development, Eagle Mountain Estates, a project owned and controlled by Steve Tackett. With the goal of developing the land into a cohesive residential community while sharing the costs of marketing, amenities, and off-site construction, Greenbank and Tackett had entered an agreement in 2006 to merge the Silverdove property with Eagle Mountain Estates. Tackett's Eagle Mountain Estates, LLC, then began work on Silverdove's infrastructure.

¶3 In December 2007, Steve Tackett and Bonnie Vanzant formed Doveland Developments, LLC, for the purpose of developing the Silverdove property. Steve Tackett signed the agreement on behalf of ProCon Capital Corporation, a company formed to take over the interest of Eagle Mountain Estates. On January 1, 2008, Bonnie Vanzant signed Doveland Developments' operating agreement on behalf of TM2008 Investments, a company formed to replace her interest in Doveland Developments. These entities are the only members of Doveland Developments.

¶4            In March 2008, Silverdove Properties, LLC, and Doveland Developments, LLC, entered a vacant land purchase agreement. According to this agreement, Doveland Developments would develop the Silverdove property and pay Silverdove a total of $1,890,000; Silverdove would receive payment as Doveland Developments sold the improved lots. The parties also memorialized this agreement by signing a promissory note secured by deed of trust with final payment due on May 1, 2013.

¶5            To further finance the development of Silverdove, Doveland Developments obtained a construction loan from Biltmore Bank. The loan was to be disbursed in stages as Doveland Developments and its contractors completed phases of development and the City of Show Low certified that construction. Biltmore Bank also required Bonnie Vanzant and Steve Tackett to personally guarantee the loan. Vanzant and Tackett then signed an indemnification agreement between one another in the event of default.

¶6            During 2008, Doveland Developments obtained three draws on the loan as it proceeded with the construction of infrastructure. Other corporations owned by Tackett primarily handled the construction and marketing efforts. By January 2009, however, Biltmore Bank had issued its first letter of default, alleging that Doveland Developments had failed to fulfill the terms in the construction loan that required a minimum level of construction. In a second letter of default issued in February 2009, Biltmore Bank also alleged that Doveland Developments was in default because Tackett had provided incorrect information regarding a previous bankruptcy on another credit application for another company.

¶7            Faced with notices of default, the members of Doveland Developments disagreed as to the appropriate course of action. Tackett took the position that the project could be saved, while the Vanzants wanted to avoid getting deeper into debt. Tackett suggested working with Biltmore Bank to re-establish the loan and continue construction. In the alternative, Tackett suggested encouraging the City of Show Low to pressure the bank to provide enough funds to complete the off-site construction, while the parties sought outside financing for the remaining construction. Tackett also continued negotiations with a third-party interested in the lots, producing a proposed letter of intent from the third-party to purchase up to six lots each year for three years.

¶8            Meanwhile, the Vanzants sought to extricate themselves from the project before accumulating more debt. The Vanzants refused to

challenge Biltmore Bank on the default, and instead paid the bank not only the amount necessary to cure the default, but the entire sum advanced by the bank to date. Similarly, the Vanzants decided against pressuring the City of Show Low to enforce a disputed assurance letter from Biltmore Bank. The Vanzants also rejected the proposed third-party letter of intent, stating the deal was not sufficiently developed to be profitable. In the confusion surrounding whether ProCon Capital had been administratively dissolved for failing to submit an annual report, the Vanzants attempted to deed the Doveland Developments property back to Silverdove Properties.

¶9　　　　As the project unraveled, litigation ensued. Bonnie Vanzant filed suit against Tackett, pursuant to the loan indemnification agreement, to recover half of the money she paid on the construction loan. TM2008 Investments then filed a petition for dissolution and liquidation of Doveland Developments, citing the inability to conduct business in light of the members' substantial disagreements. ProCon Capital filed counterclaims against TM2008 Investments for breach of the implied covenant of good faith and fair dealing (count 1) and breach of contract (count 3), and against TM2008 Investments and the Vanzants personally for breach of fiduciary duty (count 2).[1] In its counterclaims, ProCon Capital sought to recover investment and construction-related expenses as unjust enrichment, plus its share of the potential profit for the project.

¶10　　　　Following consolidation of the suits, the trial court granted Bonnie Vanzant's motion for summary judgment on the indemnification claim. The trial court denied TM2008 Investments' motion for summary judgment on the counterclaims. Just prior to trial, ProCon Capital voluntarily dismissed with prejudice counts 1 and 3. After an eight-day jury trial on the claim for breach of fiduciary duty, the jury returned a verdict in favor of ProCon Capital and against TM2008 Investments and the Vanzants personally for a total of $1,039,754.

---

[1]　　　　ProCon Capital also sought declaratory and injunctive relief regarding TM2008 Investments' attempt to deed the property back to Silverdove Properties. The trial court later determined that this counterclaim was moot because TM2008 Investments agreed the document was null and void, and this claim is not a subject of this appeal except as it relates to the alleged breach of fiduciary duty.

**¶11**        TM2008 Investments and the Vanzants filed post-trial motions for judgment as a matter of law and a new trial that the trial court denied.  The court also awarded ProCon Capital its attorneys' fees in the amount of $93,422.  TM2008 Investments and the Vanzants filed a timely notice of appeal.  We have appellate jurisdiction pursuant to the Arizona Constitution,  Article 6, Section 9 and Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1) (West 2014).[2]

**ANALYSIS**

**¶12**        TM2008 Investments and the Vanzants (collectively "Appellants") argue that the trial court erred by imputing common law fiduciary duties to the members of Doveland Developments.  Appellants also argue that the jury determined damages based on improper evidence. We review the existence of a fiduciary duty *de novo.  Maxfield v. Martin*, 217 Ariz. 312, 314, ¶ 12, 173 P.3d 476, 478 (App. 2007) (citation omitted). We review the trial court's decision to admit evidence for an abuse of discretion or legal error and resulting prejudice.  *Belliard v. Becker*, 216 Ariz. 356, 358, ¶ 13, 166 P.3d 911, 913 (App. 2007) (citation omitted).

I.        *Doveland Developments and the Existence of a Fiduciary Duty*

**¶13**        Limited liability companies are statutorily-created entities, designed primarily to provide the personal liability protection found in a corporate structure, while allowing the LLC members the state and federal tax benefits generally provided in a partnership setting.

**¶14**        Arizona enacted its Limited Liability Company Act in 1992. *See* 1992 Ariz. Legis. Serv. Ch. 113 (S.B. 1084) ("the LLC Act"); A.R.S. § 29-601, et seq.  Unlike other statutorily-blessed business arrangements,[3] the LLC Act does not refer to any baseline fiduciary duties that members of an

---

[2]        We cite the current Westlaw version of the applicable statutes and rules because no revisions material to this decision have since occurred.

[3]        *See*, *e.g.*, A.R.S. § 10-830(A) (establishing fiduciary duties for director of corporation); A.R.S. § 10-842(A) (establishing fiduciary duties for officer of corporation with discretionary authority); A.R.S. § 29-1034(A) ("The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections B and C.").

LLC owe to the LLC or to one another. Appellants contend that, absent clear statutory language to the contrary, members of an LLC, like shareholders in a corporation, do not owe the entity or one another a fiduciary duty. ProCon Capital argues that, of necessity, LLC members must owe one another a fiduciary duty, either because members are like shareholders in a closely-held corporation, *see Mims v. Valley Nat. Bank*, 14 Ariz. App. 190, 192-93, 481 P.2d 876, 878-79 (1971), or partners in a partnership, *Hurst v. Hurst*, 1 Ariz. App. 603, 607, 405 P.2d 913, 917 (1965). Faced with these diametrically-opposed arguments, the trial court concluded that the "appellate courts will likely find . . . a fiduciary duty owed by a member of an LLC such as Doveland to another member."

¶15        We decline in this case to mechanically apply fiduciary duty principles from the law of closely-held corporations or partnerships to a limited liability company created under Arizona law. The legislature did not explicitly outline any such duties for members of an LLC; instead, the LLC Act allows the members of an LLC to not only create an operating agreement, but also delineate in that agreement the duties members owe one another. *See* A.R.S. § 29-682(B) ("An operating agreement governs relations among the members and the managers . . . and may contain any provision that is not contrary to law and that relates to . . . duties or powers of its members . . . .").[4] The members of Doveland Developments created a written operating agreement (the "Agreement") which does, as discussed below, outline reciprocal duties the members would owe each other. Therefore, the trial court erred by imputing, without reference to the Agreement, a fiduciary duty on the members of Doveland

---

[4]        For a similar principle in the common law, see Restatement (Third) of Agency § 8.06(1) (2006) (permitting the principal to consent to "[c]onduct by an agent that would otherwise constitute a breach of duty"). *But see* Restatement (Third) of Agency § 8.06(1) cmt. b (2006). At oral argument, ProCon Capital suggested that interpreting the LLC Act to permit members of an LLC to establish the existence and scope of duties would lead to operating agreements that condone "cheating and stealing" under the guise of contract law. As the plain text of the LLC Act makes clear, however, the operating agreement "may contain any provision that is not contrary to law." A.R.S. § 29-682(B). Because cheating and stealing would clearly be contrary to law, ProCon Capital's public policy concerns are unfounded.

Developments to each other based solely on principles applicable to closely-held corporations and/or partnerships.[5]

### A.    Duty and the Operating Agreement

**¶16**        We reject as a preliminary matter Appellants' contention that Article II, Section A of the Agreement necessarily precludes application of closely-held corporation or general partnership principles concerning fiduciary duties to members of this LLC.  Article II, Section A reads:  "The Members acknowledge this Company shall be operated in a manner consistent with its treatment as a partnership for federal and Arizona income tax purposes. . . . [H]owever, it is acknowledged under Arizona law that the entity is a limited liability company and specifically not a general partnership."  This section of the Agreement merely restates one of the twin aims of forming an LLC:  Doveland Developments will be taxed as a partnership. *See, e.g.*, Ronold P. Platner, *A New Alternative – the Arizona Limited Liability Company*, Ariz. Att'y, Jan. 1993, at 23 ("The LLC resembles the traditional corporation on owner liability issues but is treated like a partnership for federal and Arizona income tax purposes. This means the owners of an LLC can enjoy the benefits of the 'corporate shield' plus the tax benefits of partnerships."  (footnote omitted)).  In short, the cited language of the Agreement does not preclude the court from determining whether and to what extent the Agreement establishes that members owe each other a fiduciary duty.

---

[5]        ProCon Capital urges us to consider the legislative history of the LLC Act for the proposition that members of an LLC have the same obligations (i.e., fiduciary duties) as officers of a corporation.  *See* Ariz. State Sen. Final Revised Fact Sheet for S.B. 1084 (limited liability company act), at 7 (noting amendments adopted by senate committee "[c]larif[y] that members, managers, employees, officers, or agents of limited liability companies have the *same liability* as similar corporate officers and directors") (emphasis added).  However, this reference to "same liability" in the legislative history sheds no light on the more specific fiduciary duty members of an LLC might owe to each other.  Absent clear reference to fiduciary duties, and given the text of the LLC Act, a more considered reading of the legislative history suggests "same liability" refers to the limitation on liability owed to third parties. *See also* Minutes of Comm. on Commerce and Labor, S. 40, 2d Sess., at 4 (Ariz. 1992) (statement of analyst Patrice Kraus) (summarizing that the LLC Act "provides that members of a limited liability company generally are not personally liable for the debts and obligations of the company.").

¶17　　　　Article V, Section A of the Agreement provides that "[t]he Members shall direct, manage, and control the business of the Company to the best of the Members' ability and[] *subject only* to those restrictions set forth in the Act or this Agreement." (Emphasis added). In Article V, Section F, the Agreement states:

> It is agreed any Member *shall not be liable to* the Company or *any other Member for any damages* or the like *relating to any vote, decision, action, inaction or the like taken on behalf of the Company* in accordance with these provisions and other provisions of this Agreement *if such is done in good faith and with reasonable business judgment including the duty to make management decisions with the care of an ordinarily prudent person in a like position and similar circumstances and in a manner believed to be in the best interests of the Company*. (Emphasis added).

This provision unquestionably establishes, pursuant to A.R.S. § 29-682(B), the existence and scope of the duties owed by and between TM2008 Investments and ProCon Capital as members of Doveland Developments. We need not reach the issue of whether these duties are "fiduciary" in nature; that label may evoke different concepts and applications in different settings. We do note, however, that in this Agreement: (1) the obligation to act in good faith explicitly acknowledges what is generally implied at law in any contractual relationship; (2) the obligation to utilize reasonable business judgment and to act as an ordinarily prudent person in making decisions seems to establish an applicable standard of care; and (3) the obligation to act in a manner believed to be in the best interests of the Company appears consistent with the general concept of a duty of loyalty to the business entity, here Doveland Developments.

### B.　　The Operating Agreement and the Jury Instructions

¶18　　　　Appellants argue that the jury instructions misstated the nature of the duty owed by the members of Doveland Developments to each other. "We review jury instructions as a whole to determine whether the jury has been given the proper rule of law to apply when coming to a decision." *Dawson v. Withycombe*, 216 Ariz. 84, 105, ¶ 63, 163 P.3d 1034, 1055 (App. 2007) (citation omitted). "A jury verdict will not be overturned because of the jury instructions that were given unless there is a substantial doubt as to whether or not the jury was properly guided in its deliberations." *Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App. 1989).

¶19     In relevant part, the jury was instructed on duty as follows:

Defendant, TM2008 Investments, Inc., and Plaintiff, Procon Capital Corporation, were Members in Doveland [Developments], L.L.C.

Members in an L.L.C. owe a special duty to one another, which is called a fiduciary duty. This duty requires Members to deal in utmost good faith with one another and fully disclose to one another all material facts relating to the L.L.C.'s affairs within their knowledge.

Plaintiff, Procon Capital Corporation, claims that Defendant, TM2008 Investments, Inc., breached this fiduciary duty. To establish this claim, Plaintiff must prove:

1. TM2008 Investment breached this duty;

2. TM2008 Investments' breach was a cause of Procon Capital Corporation's damages; and

3. Procon Capital Corporation's damages.

¶20     As previously noted, the trial court concluded in summary judgment proceedings that a fiduciary duty between the members existed, not based upon the parties' written Agreement, but rather based upon comparison with other business forms and the common law. Article V, Section F of the Agreement, however, establishes the duties owed and the liability yardstick by which the claims and defenses of this case are measured. By failing to advise the jury of the parameters specifically outlined in Article V, Section F of the Agreement, the trial court did not inform or guide the jury concerning the nature and extent of the duties TM2008 Investments owed ProCon Capital. We therefore reverse the verdict and judgment in favor of ProCon Capital and remand for a new trial.[6]

---

[6]     We note the mandatory alternative dispute resolution provisions set forth in the Agreement at Article XIV, but do not in this decision determine whether, on remand, the claims in this case are subject to mediation and/or binding arbitration.

II.    *Damages*

**¶21**    Appellants argue that recovery predicated on unjust enrichment is not available to ProCon Capital because "TM2008 [Investments] did not and does not now own the [improved] land and therefore cannot legally or practically be 'enriched' by such 'enhancement.'  The only party enriched was Doveland [Developments] . . . ."  Appellants also argue that ProCon Capital improperly introduced and relied on evidence of the construction and other project-related debt owed by Doveland Development to legally distinct entities owned by Steve Tackett.

### A.    *Unjust Enrichment*

**¶22**    At oral argument, ProCon Capital asserted that unjust enrichment is available because the Vanzants will ultimately gain control of the land through the note and deed of trust between Doveland Developments and Silverdove Properties, LLC, leading the Vanzants to be unjustly enriched. For the following reasons, we conclude that a claim of unjust enrichment is not yet ripe for adjudication at this stage in the judicial process.

**¶23**    *Flooring Systems, Inc. v. Radisson Grp., Inc.*, 160 Ariz. 224, 772 P.2d 578 (1989), illustrates why unjust enrichment is not yet applicable at this stage of the proceedings.  Flooring Systems was a subcontractor that performed flooring work in a Radisson hotel on a contract with a separate general contractor.  *Id.* at 225, 772 P.2d at 579.  When the general contractor refused to pay Flooring Systems, Radisson refused to pay the general contractor the remainder of the balance, but also refused to pay Flooring Systems for the work performed.  *Id.* at 225-26, 772 P.2d at 579-80.

**¶24**    Flooring Systems then sued Radisson and Radisson's agent on a theory of unjust enrichment.  *Id.*  The trial court granted the defendants' motions for summary judgment after the defendants argued that they could not be held liable because they contracted with the general contractor, not Flooring Systems.  *Id.* at 226, 772 P.2d at 580.  This argument rested on a line of cases based on the Restatement of Restitution § 110 (1937), which states:

> § 110 Restitution from Beneficiary of a Contract with Third Person Who Has Failed to Perform.
>
> A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled

to restitution from the other merely because of the failure of performance by the third person.

*See Flooring Systems, Inc.*, 160 Ariz. at 226, 772 P.2d at 280; *see also Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App. 1984); *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 117 Ariz. 451, 573 P.2d 525 (App. 1977).

¶25            On appeal, however, the supreme court rejected that defense, relying on the principle that:

> In determining whether it would be unjust to allow the retention of benefits without compensation, a court need not find that the defendant intended to compensate the plaintiff for the services rendered or that the plaintiff intended that the defendant be the party to make compensation. This is because the duty to compensate for unjust enrichment is an obligation implied by law without reference to the intention of the parties. What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not conferred officiously.

*Flooring Systems, Inc.*, 160 Ariz. at 227, 772 P.2d 578, 581 (citations and quotations omitted).

¶26            Viewing our case through this lens, the arguments of both sides come into focus:  TM2008 argues that the principle from the Restatement of Restitution § 110 governs the situation; conversely, ProCon Capital argues that *Flooring Systems, Inc.* should apply.

¶27            Comparing this case to *Flooring Systems, Inc.*, we conclude that any claim of unjust enrichment here is not ripe for adjudication until the liquidation of Doveland Developments occurs. This conclusion allows the liquidation process to settle the debts owed by Doveland Developments after liquidation and affords the parties in any potential post-liquidation suit the opportunity to advocate for the application of the proper rule at that time.

### B.      Evidence of Damages

¶28            Appellants contend that the trial court erred by admitting evidence of debts owed by Doveland Developments to legally distinct entities owned by Steve Tackett. The trial court admitted the disputed

evidence because it was relevant to establish a breach of the fiduciary duty owed by Appellants and the infrastructure value added to the Silverdove property. The trial court did not abuse its discretion in admitting the evidence on the issue of breach of duty; however, the court did err in allowing the jury to utilize this evidence to calculate any damage award in favor of Appellants against ProCon Capital. The debts owed by Doveland Developments to separate legal entities that are not parties to this suit are more appropriately directed to the liquidation proceedings for Doveland Developments.

    III.    *Attorneys' Fees*

**¶29**        Appellants appeal the trial court's award of attorneys' fees. Because we have reversed the judgment, we also reverse the award of attorneys' fees.

**¶30**        ProCon Capital requests attorneys' fees on appeal pursuant to Arizona Rule of Appellate Procedure 21 and A.R.S. § 12-341.01(A). However, § 12-341.01(A) requires that a party be successful to be entitled to an award of attorneys' fees. Because ProCon Capital is not yet successful, we deny its request.

**¶31**        Appellants request attorneys' fees on appeal pursuant to A.R.S. § 12-2101, Arizona Rule of Civil Appellate Procedure 21(a) and (c) and the Operating Agreement. Section 12-2101 is a jurisdictional statute, and neither that statute nor Rule 21, ARCAP, provides a substantive basis for an award of attorneys' fees. The Agreement does authorize payment of "attorney fees incurred because of [a] breach"; however, Appellants have not pursued any breach of contract claim in this action.[7]    We therefore deny their request.

**¶32**        We take no position with regard to the basis for or propriety of an attorneys' fees award for either party following the resolution of the underlying merits of this case. Accordingly, we reserve the question of attorneys' fees without prejudice to the sound discretion of the trial court.

---

[7]    Appellants have explicitly argued in their briefing to this court that an attorneys' fee award based on a claim of breach of fiduciary duty sounding in tort, as the claim was prosecuted below, is improper.

## CONCLUSION

**¶33** We reverse and remand the case for a new trial consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: MJT